No. 25-1919

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

TRACY HOWARD, ADINA RINGLER, and TRE'CEE ARTIS,
Plaintiffs-Appellants,

v.

THE HAIN CELESTIAL GROUP, INC.,
Defendant-Appellee.

Appeal from the United States District Court for the Northern District of California
Case No. 3:22-cv-527-VC (Chhabria, J.)

# ANSWERING BRIEF OF DEFENDANT-APPELLEE THE HAIN CELESTIAL GROUP, INC.

Dean N. Panos
Andrianna D. Kastanek
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
dpanos@jenner.com
akastanek@jenner.com

Kate T. Spelman
Alexander M. Smith
Madeline P. Skitzki
JENNER & BLOCK LLP
515 South Flower Street #3300
Los Angeles, CA 90071
(213) 239-5100
kspelman@jenner.com
asmith@jenner.com
mskitzki@jenner.com

*Attorneys for Defendant-Appellee*
*The Hain Celestial Group, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1-1, Defendant-Appellee The Hain Celestial Group, Inc. states that it is a publicly traded company (NASDAQ: HAIN), that it has no parent company, and that no individual or entity owns more than 10% of its stock.

Dated: January 26, 2026

/s/ Dean N. Panos
Dean N. Panos

## TABLE OF CONTENTS


INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 4

QUESTIONS PRESENTED .......... 5

STATEMENT OF THE CASE .......... 6

STANDARD OF REVIEW .......... 24

SUMMARY OF ARGUMENT .......... 24

ARGUMENT .......... 27

I. The District Court Correctly Granted Summary Judgment on Plaintiffs' Claim Under the UCL's Unlawful Prong. .......... 27

A. 21 C.F.R. § 101.13(b)(3) Prohibits Nutrient Content Claims Only on Products Intended Specifically—i.e. Primarily or Particularly—for Children under Two. .......... 28

B. Plaintiffs Failed to Establish That the Products Are "Intended Specifically" for Children Under Two. .......... 34

II. Alternatively, the Court Should Affirm Because Plaintiffs Failed to Quantify their Entitlement to Restitution. .......... 40

III. The District Court Did Not Abuse Its Discretion in Declining to Certify a Rule 23(b)(3) Class. .......... 45

A. Plaintiffs' Putative Class Was Overbroad, Defeating Predominance. .......... 46

1. A class that includes many uninjured consumers fails Rule 23(b)(3)'s predominance requirement. .... 46

2. Plaintiffs' proposed class definition caused individualized questions to predominate. .......... 51

3. Plaintiffs' contrary arguments are unpersuasive.... 53

B. The District Court Did Not Abuse Its Discretion in Declining to Reconsider Its Denial of Class Certification. .......... 60

C. The District Court Did Not Abuse Its Discretion in Refusing to Certify a Narrower Class and Denying Plaintiffs' Class Certification Motion with Prejudice. .......... 62

IV. The District Court Did Not Abuse its Discretion in Declining to Certify a Rule 23(b)(2) Class. .......... 67

CONCLUSION .......... 71

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*389 Orange Street Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999) .......... 61

*Avritt v. Reliastar Life Ins. Co.*,
615 F.3d 1023 (8th Cir. 2010) .......... 58

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) .......... 67

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) .......... 48

*Black Lives Matter L.A. v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024) .......... 24, 45

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .......... 65

*Brockey v. Moore*,
107 Cal. App. 4th 86 (2003) .......... 34

*Bruton v. Gerber Prods. Co.*,
703 F. App'x 468 (9th Cir. 2017) .......... 58, 60

*Castillo v. Bank of Am., NA*,
980 F.3d 723 (9th Cir. 2020) .......... 46, 47

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal.4th 163 (1999) .......... 28, 57

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 68

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006) .......... 41

*Colpitts v. Blue Diamond Growers*,
2023 WL 2752161 (S.D.N.Y. Mar. 31, 2023) .......................................... 43

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......................................................................... 45, 64

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) ............................................................ 51

*County of Riverside v. McLaughlin*,
500 U.S. 44 (1991) .......................................................................... 70, 71

*Cover v. Windsor Surry Co.*,
2017 WL 9837932 (N.D. Cal. July 24, 2017) ......................................... 65

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ................................................... 68, 69, 70

*Davidson v. Sprout Foods, Inc.*,
106 F.4th 842 (9th Cir. 2024) .............................................................. 7

*Downey v. Pub. Storage, Inc.*,
44 Cal. App. 5th 1103 (2020) ..................................................... *passim*

*DZ Reserve v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) .............................................................. 67

*Easley v. Cromartie*,
532 U.S. 234 (2001) ............................................................................ 61

*Esparza v. Safeway, Inc.*,
36 Cal. App. 5th 42 (2019) ....................................................... 41, 42, 47

*In re Folgers Coffee Mktg.*,
159 F.4th 1151 (8th Cir. 2025) ................................................ 53, 54, 55

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) .............................................................. 41

*G & G Closed Cir. Events, LLC v. Liu*,
45 F.4th 1113 (9th Cir. 2022) .............................................................. 27

*Gill v. U.S. Dep't of Justice*,
913 F.3d 1179 (9th Cir. 2019) .......... 24

*Gonzalez v. ICE*,
975 F.3d 788 (9th Cir. 2020) .......... 63

*In re Google AdWords Litig.*,
2012 WL 1595177 (N.D. Cal. May 4, 2012) .......... 61, 62

*Hall v. Marriott Int'l, Inc.*,
344 F.R.D. 247 (S.D. Cal. 2023) .......... 65

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .......... 45

*Heagney v. John Paul Mitchell Sys.*,
2023 WL 4947974 (N.D. Cal. Aug. 2, 2023) .......... 69

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) .......... 45, 71

*In re IPO Sec. Litig.*,
483 F.3d 70 (2d Cir. 2007) .......... 63

*Jensen v. Natrol, LLC*,
2020 WL 416420 (N.D. Cal. Jan. 27, 2020) .......... 65

*Johannessohn v. Polaris Indus. Inc.*,
9 F.4th 981 (8th Cir. 2021) .......... 54

*Jones v. ConAgra Foods, Inc.*,
2014 WL 2702726 (N.D. Cal. June 13, 2014) .......... 60

*Kenney v. Fruit of the Earth, Inc.*,
2024 WL 4578981 (9th Cir. Oct. 25, 2024) .......... 70

*Khasin v. R.C. Bigelow, Inc.*,
119 F. Supp. 3d 1153 (N.D. Cal. 2015) .......... 42, 53, 55

*Kisor v. Wilkie*,
588 U.S. 558 (2019) .......... 28, 32

*Lab'y Corp. of Am. Holdings v. Davis*,
145 S. Ct. 1133 (2025) .......... 51

*Lab'y Corp. of Am. Holdings v. Davis*,
605 U.S. 327 (2025) .......... 51

*League of Cal. Cities v. FCC*,
118 F.4th 995 (9th Cir. 2024) .......... 30

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 50

*Lytle v Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024) .......... 59

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 48, 49

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) .......... 34

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025) .......... 55

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) .......... *passim*

*Otto v. Abbott Labs., Inc.*,
2015 WL 12776591 (C.D. Cal. Jan. 28, 2015) .......... 55

*Price v. Hawaii*,
921 F.2d 950 (9th Cir. 1990) .......... 61

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) .......... 50

*Rahman v. Mott's LLP*,
2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) .......... 69

*Rodriguez v. Airborne Express*,
265 F.3d 890 (9th Cir. 2011) .......... 67

*Sec'y of Lab. v. Seward Ship's Drydock, Inc.*,
937 F.3d 1301 (9th Cir. 2019)....................28, 30, 32

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125 (2020)....................56, 57

*Shanks v. Jarrow Formulas, Inc.*,
2019 WL 7905745 (C.D. Cal. Dec. 27, 2019)....................44

*Simmons v. Arnett*,
47 F.4th 927 (9th Cir. 2022)....................27

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................50, 52, 68

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011)....................57, 58, 59

*Steroid Hormone Product Cases*,
181 Cal. App. 4th 145 (2010)....................58, 59

*In re Tobacco II Cases*,
46 Cal.4th 298 (2009)....................57, 58, 59

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................52

*Tucker v. Pac. Bell Mobile Servs.*,
208 Cal. App. 4th 201 (2012)....................49

*United States v. Korotkiy*,
118 F.4th 1202 (9th Cir. 2024)....................29

*United States v. Nature*,
898 F.3d 1022 (9th Cir. 2018)....................30

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023)....................47

*Walker v. BOKF, Nat'l Ass'n*,
30 F.4th 994 (10th Cir. 2022)....................32

*Walker v. Life Ins. Co. of Sw.*,
953 F.3d 624 (9th Cir. 2020) .......... *passim*

*Weiner v. Snapple Beverage Corp.*,
2011 WL 196930 (S.D.N.Y. Jan. 21, 2011) .......... 43

*Wetzel v. CertainTeed Corp.*,
2019 WL 3976204 (W.D. Wash. Mar. 25, 2019) .......... 65

**Statutes and Rules**

21 U.S.C. § 343 .......... 6

28 U.S.C. § 1291 .......... 5

28 U.S.C. § 1332 .......... 4

Cal. Bus. & Prof. Code §§ 17200 *et seq.* .......... *passim*

Cal. Bus. & Prof. Code § 17203 .......... 47

Fed. R. Civ. P. 23 .......... *passim*

N.D. Cal. Local Civ. R. 7-9 .......... 61

**Other Authorities**

21 C.F.R. § 101.13 .......... *passim*

Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms
56 Fed. Reg. 60,421 (Nov. 27, 1991) .......... 7, 33

Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food,
58 Fed. Reg. 2302 (Jan. 6, 1993) .......... *passim*

*Specifically*, Dictionary.com, https://tinyurl.com/2zwcjcxx .......... 29

*Specifically*, Merriam-Webster Online Dictionary,
https://tinyurl.com/3jy5w2hn .......... 29

*Specifically*, Oxford English Dictionary,
https://tinyurl.com/matmyf3b .......................................................... 29, 30

## INTRODUCTION

This is a food labeling lawsuit in which Plaintiff-Appellants Tracy Howard, Adina Ringler, and Tre'cee Artis, on behalf of a putative class, challenge the labeling of certain products that the Hain Celestial Group, Inc. manufactures for preschool-aged children.[1] Those labels contain nutrient content claims—such as "4g Protein" and "Excellent Source of Calcium, Zinc and Six B Vitamins"—that truthfully highlight the presence of valuable nutrients in the products. Plaintiffs do not dispute that the products contain the nutrients advertised on the labeling.

Instead, Plaintiffs claim that the products' labels are "unlawful" under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, because an FDA regulation prohibits nutrient content claims on products "intended specifically" for children under two. *See* 21 C.F.R. § 101.13(b)(3). Plaintiffs claim that this alleged regulatory violation caused *all* California consumers to pay a premium for the

[1] Hain Celestial cites Plaintiffs' excerpts of record as "ER" preceded by volume number and followed by page number, the supplemental excerpts of record submitted with this brief as "SER," and Plaintiffs' opening brief as "Op. Br." Unless noted, internal citations, quotation marks, and alterations have been omitted from case citations. All references to a "Rule" refer to the Federal Rules of Civil Procedure.

products, regardless of whether they bought those products for children under two.

The district court properly rejected Plaintiffs' theory and granted summary judgment to Hain Celestial. As the district court found, the products at issue are not intended—let alone "intended specifically," 21 C.F.R. § 101.13(b)(3)—for children under two. In fact, each product explicitly states on the label that it is for children *over* two, which is consistent with how Hain Celestial marketed the products.

Plaintiffs challenge the district court's summary judgment ruling based on their misreading of section 101.13(b)(3), under which the word "specifically" would become superfluous. As the district court explained, "intended specifically" must mean more than simply "intended." The best reading of section 101.13(b)(3)—consistent with its text, structure, history, and purpose—is that it prohibits nutrient content claims only on products intended primarily or particularly for children under two, as opposed to children from a broader age range.

The products at issue are not intended specifically, or primarily, for children under two. Their labels state that they are "For Ages 2+," they were marketed as such, and a consumer survey reflects that they were

predominantly purchased for children over two. At most, the evidence Plaintiffs cite suggests that the products were intended for children both over *and* under two, which section 101.13(b)(3) does not prohibit.

This Court can also affirm the summary judgment ruling on the independent and alternative ground that Plaintiffs cannot establish their alleged entitlement to restitution, as California law requires, because they offered no evidence of the number of products they purchased or the total amount they spent on the products.

If the Court reaches the class certification issue, which would be unnecessary following affirmance of summary judgment, it should affirm the denial of Plaintiffs' motion for class certification. Plaintiffs' proposed class under Rule 23(b)(3) consisted of many consumers who purchased the products for children *over* two and suffered no conceivable injury attributable to the nutrient content claims. And although Plaintiffs claim that *everyone* who bought the products paid a so-called price premium (regardless of whom they bought the products for), the district court correctly rejected this argument. Consumers purchasing the products for children *over* two received exactly what they paid for—a product suitable for children over two containing all nutrients advertised on the labeling.

Finally, the district court correctly declined to certify a Rule 23(b)(2) class because Plaintiffs lack standing to seek injunctive relief. There is no reason to believe—and certainly no evidence—that Plaintiffs would purchase the products for children under two in the future, much less that Plaintiffs face imminent risk of future harm.

## JURISDICTIONAL STATEMENT

On January 26, 2022, Plaintiffs Howard and Ringler filed a putative class action complaint, invoking jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). 2-SER-490–522. Plaintiffs filed an amended complaint on June 2, 2022. 2-SER-432–487. They filed the operative second amended complaint on November 2, 2022, which added Plaintiff Artis. 2-SER-364–431. As required by CAFA, the proposed class consists of at least 100 members; Hain Celestial, a citizen of New York when the complaint was filed, is diverse from the California-only class; and the aggregate amount in controvery exceeds $5 million, exclusive of interest and costs. 2-SER-366 ¶¶ 8–12; 28 U.S.C. § 1332(d)(2).

The district court denied Plaintiffs' motion for class certification on February 22, 2024 (1-ER-13–16), and it granted summmary judgment to

Hain Celestial on February 5, 2025 (1-ER-3–5). It entered final judgment on February 21, 2025. 1-ER-2. Plaintiffs timely filed a notice of appeal on March 21, 2025. 10-ER-2040–2043. This Court has jurisdiction under 28 U.S.C. § 1291.

## QUESTIONS PRESENTED

1. Whether the district court correctly granted summary judgment to Hain Celestial where the record contains no evidence that the products at issue are "intended specifically"—that is, primarily or particularly—for children under two.

2. Whether this Court should affirm the summary judgment ruling on the alternative ground that Plaintiffs offered no evidence of the number of products they purchased or the amount they spent on those products, as needed to permit a factfinder to award restitution under California law.

3. Whether the district court abused its discretion in declining to certify a Rule 23(b)(3) class, and in denying Plaintiffs leave to file a motion for reconsideration or a second motion for class certification, where: (a) the putative monetary-relief class included non-injured consumers, defeating predominance; and (b) even if the class were more

narrowly defined, Plaintiffs' damages model cannot distinguish purchases made for children under two from purchases that were not.

4. Whether the district court abused its discretion in declining to certify a Rule 23(b)(2) class where Plaintiffs made the request only in passing and, in any event, did not establish a likelihood of imminent future harm.

## STATEMENT OF THE CASE

### *Regulatory Background*

The FDA has issued regulations under Section 403(r) of the Federal Food, Drug, and Cosmetic Act ("FDCA") that govern "nutrient content claims"—i.e., labeling statements that "characterize[] the level of a nutrient" in a food. 21 U.S.C. § 343(r); 21 C.F.R. § 101.13(b). Those regulations include a provision restricting nutrient content claims on foods "intended specifically" for children under the age of two:

> Except for claims regarding vitamins and minerals … no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age unless the claim is specifically provided for in parts 101, 105, or 107 of [Title 21, Chapter I].

21 C.F.R. § 101.13(b)(3). The FDA adopted this restriction after finding it "lack[ed] evidence" that restricting or increasing intake of specific

nutrients was "appropriate and recommended for infants and toddlers." Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 56 Fed. Reg. 60,421, 60,424 (Nov. 27, 1991). As this Court has explained, the FDA's reasoning was that "what is good for adults may not be so good for babies." *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 846 (9th Cir. 2024).

Nonetheless, the FDA maintains that nutrient content claims "provid[e] information that is useful to the general population" by highlighting the presence of valuable nutrients in food, 56 Fed. Reg. at 60421; that a "complete prohibition of nutrition content claims on foods for infants and children less than 2 years of age" would be "overly broad," Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg. 2302, 2304 (Jan. 6, 1993); and that "there is no basis … to limit nutrient content claims to *only* foods intended for the population over the age of 2," *id.* (emphasis added).

The FDA's regulations balance these considerations by prohibiting nutrient content claims only on products "intended *specifically* for use by

infants and children less than 2 years of age." 21 C.F.R. § 101.13(b)(3) (emphasis added). At the same time, the FDA expressly permits nutrient content claims on food products, including those "promoted for infants and children under the age of 2," that are "intended *primarily* for adults and older children." 58 Fed. Reg. at 2305 (emphasis added).

***Factual Background***

Hain Celestial sells a variety of children's foods under its Earth's Best brand, with offerings for every stage of a child's journey from "Birth to Backpack." 5-ER-965. Some of these products—such as formulas and grain cereal—are intended specifically for infants and say so on their labeling. For example, one version of the labeling of Earth Best's whole grain oatmeal cereal included images of diaper-clad babies and stated that it is for "Babies Ready to Move Beyond Rice Cereal":




12-ER-2505 (highlighting added). In compliance with federal law, none of the Earth's Best products intended specifically for children under two contain nutrient content claims. *See* 4-ER-729–737.

This case does not involve any Earth's Best's products intended specifically for infants and toddlers. Plaintiffs' appeal instead centers on crackers, cookies, puffs, and pouches that Earth's Best manufactures for

preschool-aged children.[2] Each of these products are part of the Earth's Best line targeting children between two and five in an effort to "[k]eep [t]oddlers consuming the Earth's Best franchise" once they stop eating baby food. 5-ER-965. And in contrast to the cereal label above, the labels on the products at issue do not reference babies or toddlers. They are geared towards preschoolers, like the following label for Sesame Street-themed Organic Letter of the Day Cookies:




---

[2] Plaintiffs' second amended complaint challenged the labeling of 14 products, *see* 2-SER-415–421, but as discussed below, the district court granted summary judgment as to ten products Plaintiffs did not purchase, *see* 1-ER-3. Plaintiffs do not challenge that aspect of the summary judgment ruling.

4-ER-682. In fact, the products whose labels are at issue on appeal expressly state that they are "for ages 2+" (or "for ages 2 and up"). A representative example appears below:




4-ER-693 (highlighting added). This statement appeared on all relevant products sold during the putative class period. *See* 5-ER-956.

In contrast to its baby and toddler foods, Hain Celestial labels its products for preschool-aged children with nutrient content claims such as "Excellent Source of Iron, Zinc, & Six B Vitamins" or "3g Plant Protein." 4-ER-625–727. Plaintiffs do not dispute that these products contain all the nutrients advertised on the labeling.

### *Procedural History*

#### *Plaintiffs' Lawsuit*

In their operative second amended complaint, Plaintiffs alleged that more than a dozen Earth's Best products bearing nutrient content claims violate 21 C.F.R. § 101.13(b)(3). 2-SER-364–365 ¶ 2, 2-SER-367 ¶ 17. Based on that purported violation, Plaintiffs sought to recover under the unlawful prong of the UCL, *see* Cal. Bus. & Prof. Code §§ 17200 *et seq.*, which borrows predicate legal violations from other areas of law and makes them independently actionable.[3]

Plaintiffs assert that the nutrient content claims on the products are *per se* unlawful under 21 C.F.R. § 101.13(b)(3) because those products are "intended specifically" for children under two. Although the product labels state that they are for children *over* two, Plaintiffs cited a variety of sources—including Hain Celestial's website (2-SER-367–368 ¶¶ 18–22), annual reports (2-SER-369–370 ¶¶ 25–27), Instagram posts (2-SER-373 ¶ 32), and online consumer reviews (2-SER-374–375 ¶¶ 34–39)—that

[3] Plaintiffs also asserted several fraud-based causes of action and an unjust enrichment claim, *see* 2-SER-407–412, which are not at issue on appeal.

purportedly show that Hain Celestial specifically intends the products for children under two.

On behalf of a putative class of California consumers, Plaintiffs sought equitable relief, including restitution and an injunction. 2-SER-412.

***Plaintiffs' Motion for Class Certification***

Pursuant to Rule 23(b)(3), Plaintiffs moved to certify a class of California consumers who purchased the products during the putative class period—regardless of the age of the child for whom the consumer purchased the products. 2-SER-336–363. Plaintiffs offered no evidence of the percentage of class members who purchased the products for children under two. *See id.* Instead, they asserted that *all* class members suffered a common economic injury because the nutrient content claims caused all consumers to pay a "price premium." *See* 2-SER-350, 354–355.

In a footnote, Plaintiffs also asked the district court to certify a class for injunctive relief under Rule 23(b)(2). 2-SER-360–361 n.6.

***District Court Order on the Rule 23(b)(3) Class***

After ordering supplemental briefing addressing "whether it would be appropriate to certify a class that includes a substantial percentage of

people who were not at risk of being misled by the alleged misbranding," 1-SER-63 , the district court denied with prejudice Plaintiffs' motion for class certification. 1-ER-13–16.

The district court held that Plaintiffs' proposed Rule 23(b)(3) class was "overbroad" because it included consumers who bought the products for children over two and thus could not have been harmed by what allegedly made the labels unlawful. 1-ER-14. In so holding, the district court noted that "[t]he whole point of a misbranding law is to prevent people from being misled" and that "FDA regulations simply prohibit specific kinds of potentially misleading statements"—that is, statements suggesting the products provide superior nutrition to children under two. *Id*. Putative class members "who bought the products for children two and up," the district court concluded, "got a product that delivers on the label's promises with respect to the child they bought it for." *Id.* Those

consumers were not harmed, and their inclusion in the proposed class foreclosed certification. *Id.*[4]

The district court also found that "[n]arrowing the class definition to cover only purchases made for children under two" could not save the class. 1-ER-14. It explained that because Plaintiffs' damages model "is unable to distinguish purchases that were made for children under two from purchases that were not," it "cannot measure damages for a class encompassing only purchases made for children under two." 1-ER-15. For that reason, "[n]arrowing the class definition would just trade one reason to deny class certification (an overbroad class) for another (an unsuitable damages model)." *Id.* The district court also held that "individualized inquiries into what each class member saw before they purchased a given product would overwhelm issues common to the class" because "the

[4] In reaching this conclusion, the district court stated that Plaintiffs' unlawful-prong claim requires proof that Plaintiffs "relied on" the labels and that "it would at least be fair to infer that the rest of the class similarly relied" of those labels. 1-ER-14. In its order on Plaintiffs' motion for leave to seek reconsideration, the district court clarified that Plaintiffs' claims do not require individualized proof of reliance but that "plaintiffs still must show that it's at least fair to infer that the rest of the class also relied on the alleged mislabeling," which Plaintiffs failed to do. 1-ER-9.

proposed class covers over a dozen different products," without evidence "common to all of the products and even though not all class members purchased all of the products." 1-ER-16.

In light of these "serious problems," the district court specified that the denial would be "without leave to file a renewed … motion" with a different class definition. *Id.*

***District Court Order on the Rule 23(b)(2) Class***

The district court also denied Plaintiffs' (passing) request to certify a class for injunctive relief under Rule 23(b)(2) due to Plaintiffs' lack of standing. 1-ER-15. It reasoned that Plaintiffs "now know that each product includes a disclaimer on the back clarifying that the product is 'for ages 2 and up,'" making it "hard to believe" they "would still intend to purchase the products for children under two while thinking the products are healthy for children under two." *Id.* The district court also found that Plaintiffs had "not shown or even alleged that they still have children under two or that they plan to have more children" for whom they would purchase the products in the future. *Id.* The district court accordingly concluded that Plaintiffs could not show a likelihood of future harm. *See id.*

***District Court's Denial of an Interlocutory Appeal and Reconsideration***

After this Court denied Plaintiffs' petition for interlocutory review under Rule 23(f), *see Howard v. Hain Celestial Grp., Inc.*, No. 24-1384 (9th Cir.), Dkt. Nos. 1, 5.1, the district court denied Plaintiffs' motion for leave to file (i) a motion to reconsider the certification order and (ii) a renewed certification motion. *See* 1-ER-6–12.

Starting with reconsideration, the district court invoked "common sense" to explain that Plaintiffs cannot "certify a class that include[s] people who bought the food for kids over the age of two" when they "sued based on a law that's designed to protect people who buy food for children under the age of two." 1-ER-6. "It should be obvious," the court reasoned, "that this is not appropriate." *Id.* But because it recognized that its earlier order on class certification "was imprecise in some respects," it took the opportunity to clarify its order. 1-ER-7.

The district court explained that Plaintiffs were wrong to characterize the class certification order as requiring a showing of class-wide deception. 1-ER-7. While "the order noted that the label could not have been misleading as to people who bought the products for children aged two or older," the district court explained that its ultimate

conclusion was that purchasers for children over two "could not have *relied* on the allegedly unlawful aspects of the label" and that an inference of class-wide reliance was improper. *Id.* An unlawful-prong claim under the UCL requires a plaintiff to show she "purchased the product in reliance on the mislabeling," even if not misled. 1-ER-8. The same requirement extends to class actions. 1-ER-9 (citing *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1121 (2020)). Thus, even if "individualized proof of actual, subjective reliance" is not required for absent class members, the district court explained that it must be "at least fair to infer that the rest of the class also relied on the alleged mislabeling." *Id.* Plaintiffs could not show that it was fair to make that inference for a class that includes consumers who purchased the product for children over two. 1-ER-10.

As for Plaintiffs' request to file a renewed class certification motion, the district court held that the denial required no "elaboration": Plaintiffs "overreach[ed] so badly on their motion for class certification ... that it would be unfair to put [Hain Celestial] through the expense of allowing [Plaintiffs] to start over." 1-ER-12.

***Hain Celestial's Motion for Summary Judgment***

Hain Celestial then moved for summary judgment. It argued that Plaintiffs had not adduced evidence from which a factfinder could conclude that the products are "intended specifically" for children under two. Hain Celestial also argued that Plaintiffs failed to adduce evidence from which a factfinder could calculate their entitlement to restitution.

***Intended Specifically for Children Under Two***. Hain Celestial argued that the nature of the products, the labels' distinct aesthetic, the use of Sesame Street characters, and the age statement on the back label all convey the message that the products are intended for preschool-aged children, rather than children under two. Hain Celestial's evidence included the following:

- All of the products at issue state on the label that they are for children *over* two. *See* 4-ER-625–727; 5-ER-956.
- Hain Celestial's website and those of its largest online retailers prominently disclose the same. *See* 9-ER-1839–1891 (Hain Celestial); 9-ER-1893–1952 (Amazon); 10-ER-1955-1984 (Target); 10-ER-1986–2014 (Walmart).
- Hain Celestial's Senior Marketing Director testified that the products at issue come in larger serving sizes with more complex formulations than baby foods, suggesting they are for children *over* two. *See* 5-ER-785–786. He also testified that many of the products are for snacking, which is a "behavior that typically starts in preschool." *Id.*

- The labels feature Sesame Street characters, and Sesame Workshop's nutritional guidelines state that "Sesame Street's educational content is targeted primarily to children between the ages of two and five." 5-ER-1017. Hain Celestial's Senior Marketing Director explained that Hain Celestial uses Sesame Street characters to "delineate … between products designed for two years old and products intended for kids below two." 5-ER-786.

Hain Celestial also proffered the report of an expert, Dr. Ronald Wilcox, who conducted a survey of 560 past purchasers of the products. 8-ER-1388–1679. The majority of survey respondents—between 61% and 70% depending on the product category—purchased the products *exclusively* for children *over* two. *See* 8-ER-1431 ¶ 109. In contrast, 25% or less of respondents (and as low as 15% for several products) purchased the products exclusively for children under two. *See id.* ¶ 110.

In their opposition, Plaintiffs relied primarily on snippets of internal Hain Celestial presentations they characterized as evidence that the products were marketed to children under two. For example, Plaintiffs cited several "Birth to Backpack" slides purportedly showing that Fruit Yogurt Smoothie pouches were marketed to parents of children under two. *See, e.g.*, 12-ER-2584, 12-ER-2595, 13-ER-2710. Plaintiffs also cited a slide showing that Elmo and Cookie Monster were "2 of kid's top

favorite characters for 0–2 year olds"—even though the same slide noted that "3 in 4 kids ages 2–5 like/like Sesame Street a lot." 13-ER-2779.

Plaintiffs also proffered a survey from Dr. J. Michael Dennis, who modified Dr. Wilcox's survey by asking respondents when they *first* purchased the products. *See* 9-ER-1685–1686 ¶¶ 9–11. Dr. Dennis claimed to find that 54% of Fruit Yogurt Smoothie purchasers and 55% of Protein Puree purchasers first purchased the products for children under two. 9-ER-1686 ¶ 11. But after reviewing Dr. Dennis's raw survey data, Dr. Wilcox determined that a majority of respondents in fact first bought the products for at least *one child over* two. 9-ER-1771 ¶¶ 15–16.

***Restitution***. As to restitution, Hain Celestial argued that Plaintiffs offered no evidence of the number of products they purchased, the price of those products, or the total amount of money they spent on the products. *See* 1-SER-37, 43–47. Plaintiffs responded by citing their testimony that they "purchased Products on at least one occasion," while asserting that "[n]othing more is required." 1-SER-11. Plaintiffs also urged the district court to rely on evidence of the products' *average* retail price during the class period as a proxy for the prices Plaintiffs actually paid. *See* 1-SER-12–14.

***District Court's Summary Judgment Ruling***

The district court granted Hain Celestial's motion for summary judgment. 1-ER-3–5.

The district court started by interpreting the phrase "intended specifically for use by infants and children less than 2 years of age" in 21 C.F.R. § 101.13(b)(3). 1-ER-3. While recognizing that the FDA has not defined the phrase, the district court held that "the best interpretation is that it means something like 'intended primarily'"—i.e., that the manufacturer directed the products primarily or particularly at children under two, as opposed to a broader age range that includes children under two. 1-ER-3–4.

The district court cited the FDA's explanation from the time it promulgated the regulation, in which "the FDA noted that it had 'not prohibited claims on foods that are promoted for infants and children under the age of 2 but that are intended primarily for adults and older children.'" 1-ER-3 (citing 58 Fed. Reg. at 2305). This statement, the court concluded, indicates that a product is not necessarily 'intended specifically' for children under two even if it is sometimes advertised as intended for those children." 1-ER-3–4.

Turning to the facts, the district court concluded that the record evidence "does not show that the products are intended *primarily* for use by children under two." 1-ER-4 (emphasis in original). Even if Hain Celestial's internal presentations show that it "intends the products to be consumed by children under two," the district court explained, those presentations do not show that it intends those products "*primarily* for use by children under two." *Id.* (emphasis in original). To the contrary, the district court reasoned, the evidence "indicat[es] that the products are *not* intended primarily for children under two." *Id.* That evidence included the age statement on the labeling and the "significant differences between the packaging of the challenged products and ... of those that Hain indisputably intended primarily for babies." 1-ER-4–5. Given the record, the district court concluded that "no reasonable jury could conclude that the products at issue are intended primarily for children under two."[5] 1-ER-4.

The district court did not address whether Plaintiffs' evidence was sufficient to calculate Plaintiffs' alleged entitlement to restitution.

[5] The district court also granted summary judgment on Plaintiffs' fraud-based claims and unjust enrichment claim. 1-ER-5. Plaintiffs do not challenge these rulings on appeal. *See* Op. Br. 5 n.2.

## STANDARD OF REVIEW

This Court "review[s] de novo a district court's grant of summary judgment." *Gill v. U.S. Dep't of Justice*, 913 F.3d 1179, 1184 (9th Cir. 2019). It "review[s] class certification orders for abuse of discretion," *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1257 (9th Cir. 2024).

## SUMMARY OF ARGUMENT

1. The district court correctly granted summary judgment on Plaintiffs' claim under the UCL's unlawful prong. As the district court concluded, the text, structure, history, and purpose of 21 C.F.R. § 101.13(b)(3) all reflect that "intended specifically," as used in this regulation, "means something like 'intended primarily,'' such that the regulation prohibits nutrient content claims only on foods directed *primarily* at children under two. 1-ER-3–4. This reading avoids surplusage and aligns with the plain meaning of "specifically." It also accords with the FDA's Final Rule, in which the agency explained that section 101.13(b)(3) does not cover products aimed primarily at older children, even if also promoted for use by infants and children under two.

On this record, there is no genuine dispute of material fact as to whether the products are intended specifically for children under two.

The labels themselves foreclose Plaintiffs' theory, as they specifically say that the products are "[f]or ages 2+." And that is how consumers generally understand the products, as survey data shows that most respondents purchased the products for children over two. While Plaintiffs point to internal Hain Celestial marketing materials as reflecting promotion of the products for those under two, at most these documents show the company's intent to market the products for children generally, which the FDA excludes from the reach of section 101.13(b)(3).

2. Alternatively, the Court can affirm summary judgment on the independent ground that Plaintiffs failed to adduce any evidence from which a factfinder could reasonably calculate their entitlement to restitution. To survive summary judgment, Plaintiffs must proffer evidence of a measurable loss warranting restitution. In food labeling cases, that loss is calculated as the difference between the price of the product as labeled versus as received, multiplied by the number of products purchased. Yet Plaintiffs failed to adduce any evidence (documentary or testimonial) of the number of products they purchased or the amount of money they spent.

3. If the Court affirms the judgment in Hain Celestial's favor (which it should), it need not reach the question whether class certification is warranted. If it does reach that question, it should affirm.

The district court did not abuse its discretion in declining to certify a Rule 23(b)(3) class. Plaintiffs could not satisfy predominance because they could not establish common proof of injury. Plaintiffs' proposed class includes many consumers who were not injured by the allegedly "unlawful" part of the labeling because they did not purchase the products at issue for children under two. Those class members do not have viable claims for restitution under the UCL and lack Article III standing because they could not have purchased the products in reliance on the products' purported suitability for children under two.

The district court also acted well within its discretion in denying Plaintiffs leave to seek reconsideration of the class certification decision or to file a renewed motion for class certification. Plaintiffs grossly overreached in their initial motion, and even if the class were narrowed, they failed to offer a damages model that could calculate damages attributable *solely* to purchases of the products for children under two.

4. The district court also correctly declined to certify a class for injunctive relief under Rule 23(b)(2). Injunctive relief would require Plaintiffs to establish that they would purchase the products again based on the products' perceived suitability for children under two and thus be imminently harmed in the same way. As the district court found, Plaintiffs failed to make that showing.

## ARGUMENT

### I. The District Court Correctly Granted Summary Judgment on Plaintiffs' Claim Under the UCL's Unlawful Prong.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Simmons v. Arnett*, 47 F.4th 927, 932 (9th Cir. 2022). Where the moving party has shown that the nonmoving party "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial, the nonmoving party then has the burden to produce evidence to support its claim." *G & G Closed Cir. Events, LLC v. Liu*, 45 F.4th 1113, 1115 (9th Cir. 2022).

The district court correctly granted summary judgment to Hain Celestial on Plaintiffs' claim under the unlawful prong of the UCL because Plaintiffs failed to offer evidence that raised a genuine dispute

about whether the products were intended "specifically" (i.e., primarily or particularly) for children under two.

### A. 21 C.F.R. § 101.13(b)(3) Prohibits Nutrient Content Claims Only on Products Intended Specifically—i.e. Primarily or Particularly—for Children under Two.

Because the UCL's "unlawful" prong "borrows violations of other laws," *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999), Plaintiffs must establish a predicate violation of 21 C.F.R. § 101.13(b)(3) to have a viable unlawful-prong claim. The threshold question, then, is what it means for a product to be "intended specifically" for children under two, as that phrase is used in section 101.13(b)(3). The answer, applying "'traditional tools' of construction"—the regulation's text, history, and purpose, *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019)—is that "intended specifically," as used in the regulation, "means something like 'intended primarily.'" 1-ER-3.

***Plain Text***. Starting with "the natural and plain meaning of [the regulation's] words," *Secretary of Labor v. Seward Ship's Drydock, Inc.*, 937 F.3d 1301, 1308 (9th Cir. 2019), the Court must give meaning to the regulation's inclusion of the word "specifically," so that it means something more than merely "intended."

Dictionaries define "specifically" to mean "[i]n a specific or definite form or manner," "in a manner that is exact and clear," "precisely, explicitly, particularly," and "with a particular or clearly defined purpose, meaning, etc."[6] *See generally United States v. Korotkiy*, 118 F.4th 1202, 1210–11 (9th Cir. 2024) (treating dictionaries as instructive when interpreting regulations). Plaintiffs cite dictionaries that say the same: Merriam-Webster Dictionary (Op. Br. 25) defines "specifically" as, among other synonyms, "in a definite and exact way" and "with precision,"[7] and Dictionary.com (*id.*) uses similar language.[8]

These definitions suggest that for a food to be "intended specifically" for children under two, it must be precisely directed at that age group in particular. They also suggest that, by prohibiting nutrient content claims only if the manufacturer intends *specifically* for the product to be used by a child under two, the FDA was focused on foods the manufacturer

---

[6] *Specifically*, Oxford English Dictionary, https://tinyurl.com/matmyf3b (last visited Jan. 27, 2026).

[7] *Specifically*, Merriam-Webster Online Dictionary, https://tinyurl.com/3jy5w2hn (last visited Jan. 27, 2026); *see* Op. Br. at 25.

[8] *Specifically*, Dictionary.com, https://tinyurl.com/2zwcjcxx (last visited Jan. 27, 2026); *see* Op. Br. at 25.

intends *particularly* for children under two—and that the manufacturer's "clearly defined" purpose must be to target that group.[9] And they suggest that a product is *not* intended specifically for children under two if intended for young children generally, including both children over and under two.

Plaintiffs' contrary interpretation would "require[] only that there are definite, precise, or exact indications that the Products are for use by children under two." Op. Br. 25. This interpretation reads the word "specifically" out of the regulation. Put differently, "intended specifically" would mean nothing more than "intended." *See United States v. Nature*, 898 F.3d 1022, 1024 (9th Cir. 2018) (courts must "construe regulations … to give effect to every word when possible"); *League of Cal. Cities v. FCC*, 118 F.4th 995, 1019 (9th Cir. 2024) (explaining rule against surplusage). To avoid that result, "specifically" must act to exclude scenarios in which a food is not uniquely or particularly intended for those under two.

***Regulatory History***. The regulation's history confirms this understanding. *See generally Seward Ship's Drydock*, 937 F.3d at 1309 (considering the regulation's purpose and history, including the final

---

[9] Oxford English Dictionary, *supra* n.6.

rule's preamble, after the plain text). In its Final Rule, discussing the promulgation of section 101.13(b)(3), the FDA used "primarily" as a synonym for "specifically," explaining that the new restriction does not "prohibit[] claims on foods that are promoted for infants and children under the age of 2" if those foods "are *intended primarily* for adults and older children." 58 Fed. Reg. at 2305 (emphasis added).

In the same publication, the FDA equated "foods primarily intended for infants and children less than two years of age" with "infant foods." *Id.* at 2304. It distinguished these foods from (i) "products that, though aimed primarily at adults and older children, are actively promoted either on the label or in the advertising as being for use by infants or children less than 2 years of age" and (ii) "foods intended for the general population that are promoted for infants and children less than 2 years of age," treating the latter two categories as *not* primarily intended for the under-two population. *Id.* As the district court explained, the FDA's contemporaneous explanation in the Final Rule "indicates that a product is not necessarily 'intended specifically' for children under two even if it is sometimes advertised as intended for those children." 1-ER-3–4.

Contrary to Plaintiffs' argument, the district court did not defy *Kisor* by considering the Final Rule before finding the regulation was ambiguous. Op. Br. 26–27. *Kisor* permits courts to consult the Final Rule in evaluating the regulation's "text, structure, [and] history," 588 U.S. at 575, as the district court did here. Courts post-*Kisor,* too, have confirmed that the Federal Register is part of a court's "legal toolkit" in construing a regulation, even before a threshold determination of ambiguity. *E.g.*, *Seward Ship's Drydock*, 937 F.3d at 1309–10 (reviewing Federal Register to determine regulation's purpose and history before finding regulation unambiguous); *Walker v. BOKF, Nat'l Ass'n*, 30 F.4th 994, 1008 (10th Cir. 2022) (considering history, including "commentary accompanying ... final rule," to determine ambiguity).

***Regulatory Purpose***. The FDA's distinction in the Final Rule between foods primarily intended for children under two, on the one hand, and those intended for a more "general population" or aimed at older children but nonetheless marketed to those under two, on the other, is consistent with section 101.13(b)(3)'s purpose.

The FDA generally permits nutrient content claims that truthfully reflect the presence of nutrients in a product. The FDA does so because

it recognizes that those claims can "make available nutrition information that can assist consumers in selecting foods that can lead to healthier diets." 58 Fed. Reg. at 2302. In contrast, the FDA has explained that it prohibits nutrient content claims on foods "intended specifically for use by infants and toddlers less than 2 years of age" because it "lacks evidence" that restricting or increasing intake of specific nutrients is "appropriate and recommended for infants and toddlers." 56 Fed. Reg. at 60424. Given this lack of evidence, the FDA lacked "sufficient basis on which to conclude" nutrient content claims "are appropriate for food specifically intended" for that population. 58 Fed. Reg. at 2304.

In other words, the FDA has made clear that nutrient content claims provide useful information to the general public, even though such claims do not serve that purpose on infant foods in isolation. It would make no sense for the FDA to prohibit nutrient content claims on products intended for consumption by a broad audience—even if that audience may *include* children under two, and even if those products are "actively promoted" for use by children under two. 58 Fed. Reg. at 2304.

### B. Plaintiffs Failed to Establish That the Products Are "Intended Specifically" for Children Under Two.

The record forecloses the conclusion that the four products at issue are intended specifically—i.e., primarily or particularly—for children under two. To start, the labels' statements that the products are intended for children *over* two precludes a finding of specific intent. But even if one considers evidence beyond the label—survey data, marketing, and internal company documents—Plaintiffs have not established that Hain Celestial specifically intended the products for children under two.

***The Label's Age Disclaimer***. It is well-settled that the "primary evidence" in a case challenging a defendant's advertising is the "advertising itself"—i.e., the product labels. *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003). It is equally well-settled that language on a product's back label can clarify an "ambiguity" on the front label—such as about the age of the children for whom it is intended. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023). Here. the products' labels, as well as Hain Celestial's website, unambiguously state that the products are "for ages 2+," "for ages 2 and up," or "24+ months." *See* 4-ER-625–727; 9-ER-1838–1891. The websites of Hain Celestial's largest retailers also specify that the products are for children over two.

*See* 9-ER-1893–1952 (Amazon: "2 Years and Older"); 10-ER-1955–1984 (Target: "2 Years and Older"); 10-ER-1986–2014 (Walmart: "2+ Years").

Given that Hain Celestial expressly labels the products as "for ages 2+" and consistently positions them for children over two, no reasonable factfinder could conclude that the products are intended *primarily* or *particularly* for children under two.[10] This is especially true because Hain Celestial labels *other* products to reflect they are intended for children under two, such as by using the word "baby," displaying images of babies, and including baby-themed representations. The following is a representative example of the contrast between the products here (on the left) and baby-focused products (on the right):

[10] Indeed, in its order on Hain Celestial's motion to dismiss Plaintiffs' initial complaint, the district court chastised Plaintiffs for failing to acknowledge the "For Ages 2+" statement on the labels. *See* 2-SER-488–489. Although the district court ultimately allowed Plaintiffs to proceed past the pleading stage, it recognized from the outset that the "For Ages 2+" statement indicates that the products are intended for children *over* two. *See id.*







4-ER-625, 729 (highlighting added).

***Survey Data***. The parties' survey evidence (which is the only record evidence that reflects whom consumers purchased the products for) confirms that the products are intended specifically for children over two. As Hain Celestial's expert Dr. Wilcox explained, an "effective marketing strategy for a product intended specifically for a particular target consumer segment … can be expected to involve communication of benefits of the product to that segment, and delivery of the product to that segment, with the overall goal of stimulating purchases and consumption of the product by that segment." 9-ER-1772 ¶ 17. Thus, "if a product is targeted specifically for a consumer segment, one would expect that a *substantial* majority of purchases of the product are made

by members of the target segment." *Id.* (emphasis added). Yet, both parties' survey data establishes that the products were *not* purchased in substantial majority for children under two.

Plaintiffs' survey data shows that only a minority of respondents purchased the products *solely* for children under two, that a majority purchased the products when one of their children was *over* the age of two, and that many bought the products for children both over and under two. *See* 9-ER-1771 ¶¶ 15–16. Dr. Wilcox conducted a similar survey of 560 past purchasers, which confirmed that a majority of consumers purchased the products for children over two, with only a small minority purchasing them exclusively for children under two. *See* 8-ER-1430–1431 ¶¶ 108–11.

***Plaintiffs' Other Evidence***. Because the products' consumer-facing advertising and the survey evidence undermines Plaintiffs' position, Plaintiffs turn to discrete aspects of the labeling and snippets of internal Hain Celestial documents. None of this evidence raises a triable issue of material fact.

Plaintiffs first argue that the labels' use of Sesame Street characters suggests that the products are intended primarily for children

under two. Op. Br. 33. But this is speculation unsupported by evidence. Per the presentation Plaintiffs themselves cite (*id.*), Sesame Street characters appeal to children between zero and two *and* children between two and five. 5-ER-999. And Sesame Workshop's Nutritional Guidelines state that "Sesame Street's educational content is targeted primarily to children between the ages of two and five." 5-ER-1017 (adding that this "age group is the audience for our nutrition guidelines").

Plaintiffs next characterize the products as targeted at "toddlers," citing Hain Celestial's website and marketing to retailers, and they define "toddler" based on a CDC website to mean a "child[] as young as 1 year old." Op. Br. 12, 30. But the CDC website *also* discusses "toddlers" as children between two and three years of age. *See* 2-SER-270. In any event, Plaintiffs cite no evidence that *Hain Celestial* used the term "toddler" to refer exclusively to children under two, as even if the term could *encompass* children under two, it is not *limited* to children under two. Hain Celestial's use of the term "toddler" is therefore not evidence of its specific intent.

Plaintiffs also argue that the products' placement by retailers in their "baby aisles" suggests that the products are specifically intended

for children under two. Op. Br. 35. But the internal presentations Plaintiffs cite do not support that conclusion. The statement "[e]xpanding EB [Earth's Best] outside the baby aisle (Yogurt) is required to grow the brand with Kids 3+" (11-ER-2133) does not mean Hain Celestial specifically intended the products at issue for children under two. Indeed, the reference to "Kids 3+" suggests a focus on those *over* two.

Likewise, the slide titled "Attract Shoppers into the Baby Aisle with Sesame Street Characters" (5-ER-1002) says nothing about whom the products are intended specifically for—particularly since Plaintiffs offered no evidence that retailers maintain separate aisles for baby food and food intended for preschool-age children, that retailers intend food stocked in the so-called "baby aisle" to be primarily for children under two, or that consumers believe that all food in that aisle is intended specifically for children under two. Indeed, two of the named plaintiffs admitted that they continued to shop for their children in the "baby aisle" after they turned two. *See* 4-ER-759 (Howard); 4-ER-777 (Ringler).

Moreover, other internal presentations (including those Plaintiffs cite) conclusively disprove Plaintiffs' claim. One specifies that the products are "for toddlers 2 years and older." 13-ER-2811. Another

explains that Hain Celestial developed these products to help "[k]eep [t]oddlers consuming the Earth's Best franchise" between two and five—which is the "backpack" portion of Hain Celestial's "Birth to Backpack" portfolio. 5-ER-965.

At most, the evidence Plaintiffs cite establishes that Hain Celestial "actively promote[s]" the products as being "for use by … children less than two years of age," while being aimed primarily at older children, or intended the products for the "general" child population—both of which the FDA has made clear is not the same as the products being "intended specifically" for children under two. 58 Fed. Reg. at 2304. Accordingly, the district court correctly found there was no triable issue of material fact, and this Court should affirm.

## II. Alternatively, the Court Should Affirm Because Plaintiffs Failed to Quantify their Entitlement to Restitution.

After the district court denied class certification, Plaintiffs continued to press their individual claims for monetary relief. But leaving aside the lack of evidence from which a factfinder could conclude that the products are intended specifically for children under two, Plaintiffs also failed to present evidence from which a factfinder could calculate their individual entitlement to restitution, as required to survive summary

judgment on a UCL claim. This provides an independent basis to affirm the judgment below.

Because injunctive relief and restitution are the only remedies available under the UCL, "[a] UCL claim must be based on the existence of harm supporting injunctive relief or restitution." *Esparza v. Safeway, Inc.*, 36 Cal. App. 5th 42, 53 (2019). Absent proof of harm supporting either type of relief, a defendant is entitled to summary judgment. *Id.* at 55 (affirming summary adjudication on UCL claim); *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) (affirming grant of summary judgment to defendant in UCL action where plaintiffs had "no claim for restitution").

As discussed in the context of class certification, *see infra* at 67–71, Plaintiffs lack standing to seek injunctive relief. The only remedy available would be restitution. But "[t]o support the recovery of restitution, the harm must be measurable." *Esparza*, 36 Cal. App. 5th at 53. "There must be evidence that supports the amount of restitution necessary to restore to the plaintiff any money … which may have been acquired by means of such unfair competition." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 697 (2006).

The "proper measure of restitution in a food labeling case," and the measure Plaintiffs sought here, "is the price premium attributable to the challenged label"—i.e., "the difference between the product as labeled and the product as received." *Khasin v. R.C. Bigelow, Inc.*, 119 F. Supp. 3d 1153, 1154 (N.D. Cal. 2015). To calculate that price premium, one would need to know the number of products Plaintiffs purchased and the amount paid. *Colgan*, 135 Cal. App. 4th at 697. Plaintiffs provided no evidence on either question, which means that their entitlement to restitution is not "measurable." *Esparza*, 36 Cal. App. 5th at 53.

Plaintiffs produced no documentary evidence of the number of products they purchased or the amount they spent—even though Hain Celestial propounded document requests seeking receipts, credit card statements, and other documentation of Plaintiffs' purchases. *See* 5-ER 825–826 (Artis); 5-ER-866–667 (Howard); 5-ER-910–911 (Ringler). When Hain Celestial served interrogatories asking Plaintiffs to provide basic details about their alleged purchases, not a single Plaintiff identified the number of products purchased, the amount paid, or any other specific information about their purchases. *See* 5-ER-850–851 (Artis); 5-ER-892–893 (Howard); 5-ER-938–939 (Ringler).

Plaintiffs were also unable to quantify their purchases during their depositions. Plaintiff Ringler did not "recall roughly how many times [she] purchased the fruit yogurt smoothie pouches" for her children, but she guessed that it was "[m]ore than half a dozen times" and "[s]emi-regularly." 4-ER-773–774. Plaintiff Artis speculated he purchased the Chicken Casserole pouch "[a]t least a dozen or more times," giving a wide range of cost: "[a]nywhere from [$]3 to $4 per pouch." 4-ER-747–748. And Plaintiff Howard did not even *attempt* to estimate her purchases or cost; she simply noted that she "got a lot of it as often as possible." 4-ER-755; *see also* 4-ER-756 ("I can't tell you on this day and time, I went to Walmart or got this. All I know is I got all my baby food from those two stores.").[11]

Plaintiffs tried to sidestep this lack of evidence by proffering an expert who sought to measure the putative class's entitlement to

[11] In other cases where the named plaintiffs offer no evidence of the number of products they purchased or the amount they paid, federal courts routinely grant summary judgment to the defendant. *See, e.g.*, *Colpitts v. Blue Diamond Growers*, 2023 WL 2752161, at *4 (S.D.N.Y. Mar. 31, 2023) (plaintiff "produced no evidence as to the price he paid for [the products] on any occasion when he purchased them"); *Weiner v. Snapple Beverage Corp.*, 2011 WL 196930, at *3 (S.D.N.Y. Jan. 21, 2011) (plaintiffs lacked "any record of [their] purchases" and were "unable to establish the actual price they paid" for the products).

restitution by multiplying total sales by a "Price Premium %" he calculated. *See* 6-ER-1178 ¶¶ 63–64. But class-wide restitution figures were irrelevant: This was not a class case when Hain Celestial moved for summary judgment, and it was Plaintiffs' burden to produce evidence of their *own* entitlement to restitution. Their expert's calculation provides no information about *Plaintiffs'* alleged entitlement to restitution—only that of the (un-certified) class as a whole.

Likewise, while Plaintiffs attempted to rely in the district court on the *average* price paid by consumers across millions of retail sales (*see* 1-SER-12–13), this is not evidence of the amount *Plaintiffs* paid, which means it is not enough to survive summary judgment.[12] And even if Plaintiffs could rely on average retail price as a proxy for the price personally paid, a factfinder still could not calculate their entitlement to restitution absent evidence of the number of products Plaintiffs purchased—which Plaintiffs repeatedly failed to provide. Summary judgment for Hain Celestial is proper on this additional ground.

---

[12] *See Shanks v. Jarrow Formulas, Inc.*, 2019 WL 7905745, at *4 (C.D. Cal. Dec. 27, 2019) (granting summary judgment on UCL claim where plaintiff "introduced no evidence … as to his monetary damages" or "any evidence of what Plaintiff himself paid" for product at issue and instead relied on evidence of product's "average price").

## III. The District Court Did Not Abuse Its Discretion in Declining to Certify a Rule 23(b)(3) Class.

If this Court affirms the district court's summary judgment ruling (as it should), it need not address the class certification ruling. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999). But if the Court reverses the summary judgment ruling, it should affirm the district court's denial of class certification.

Certification under Rule 23(b)(3) requires a plaintiff to establish not only "that the class raises common questions under Rule 23(a)," but also that those "common questions predominate over individual ones." *Black Lives Matter*, 113 F.4th at 1258. "Showing predominance is difficult, and it regularly presents the greatest obstacle to class certification." *Id.*; *see Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (describing Rule 23(b)(3) as "more demanding" than Rule 23(a)). To overcome this obstacle, Plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies [the] predominance requirement." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

The district court did not abuse its discretion in finding that Plaintiffs failed to meet this standard. Nor did it abuse its discretion in

denying class certification with prejudice and in refusing to reconsider its decision.

### A. Plaintiffs' Putative Class Was Overbroad, Defeating Predominance.

The district court correctly found that Plaintiffs' proposed class was overbroad and uncertifiable. Plaintiffs sought to certify a class of *all* California consumers who purchased the products at issue, regardless of whether they purchased the products for children under two and thus were actually harmed. *See* 1-ER-14. Whether one views this defect as a failure to establish class-wide entitlement to restitution, as an Article III standing problem, or as a failure to establish that a class-wide inference of reliance is appropriate, the district court correctly found that it was improper to certify a class that included many uninjured consumers.

#### 1. A class that includes many uninjured consumers fails Rule 23(b)(3)'s predominance requirement.

To satisfy predominance, a class cannot be "defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020). The inclusion of "uninjured class members" may render a class "fatally overbroad." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651,

669 n.14 (9th Cir. 2022) (en banc). Those class members lack viable claims for restitution under the UCL and lack Article III standing, so their inclusion within a class injects individualized issues into the case.

***Restitution***. The "assessment of predominance begins ... with the elements of the underlying cause of action." *Walker v. Life Ins. Co. of Sw.*, 953 F.3d 624, 630 (9th Cir. 2020). If there is no "common method of proof" to establish those elements, a plaintiff cannot establish predominance. *See Castillo*, 980 F.3d at 732 (affirming denial of certification where many class members "could not have been injured"); *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023) (vacating certification order where "some class members were uninjured" and therefore "lack[ed] meritorious claims").

A UCL claim requires "the existence of harm supporting ... restitution." *Esparza*, 36 Cal. App. 5th at 53. Put another way, Plaintiffs need to prove that class members' "money or property 'may have been acquired by means of' the unlawful conduct." Op. Br. 39 (quoting Cal. Bus. & Prof. Code § 17203). And because the UCL does "not authorize restitution for money or property *definitively not acquired* through" unlawful means, class certification is improper in a UCL case absent

evidence of common injury that warrants class-wide entitlement to restitution. *Downey,* 44 Cal. App. 5th at 1121.

Consistent with these principles, this Court recognized in *Walker* that the presence of uninjured class members in a UCL case can defeat a finding of predominance. 953 F.3d at 631. *Walker* cited two examples in which this Court reached that conclusion: *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014), and *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). Both are illustrative here.

In *Berger*, the putative class members received different contracts, some but not all of which contained misleading information. This meant that some class members could not have been injured by the advertisements, creating individualized questions. 741 F.3d at 1069. And in *Mazza*, this Court explained that a class must be defined to include only those injured by the advertising in question. 666 F.3d at 596. In vacating the district court's class certification order, this Court emphasized (among other things) that the inclusion of "members who learned" of the omitted information before purchasing (and thus were

unharmed by exposure to the advertising) made the class "overbroad" and defeated predominance. *Id.*[13]

California courts have likewise held that individual issues predominate, and certification is improper, in UCL actions where many class members could not have been injured by the challenged labeling.

In *Downey*, for example, the California Court of Appeal affirmed the denial of class certification because individualized issues of exposure and reliance precluded a finding of class-wide injury—and, by extension, class-wide entitlement to restitution. 44 Cal. App. 5th at 1121. Similarly, in *Tucker v. Pacific Bell Mobile Services*, the Court of Appeal found that the plaintiffs "could not present UCL class claims for restitution" because many class members were not due restitution—either because they were not exposed to the defendants' conduct or never suffered measurable injury from that conduct. 208 Cal. App. 4th 201, 228 (2012). While these

[13] In *Olean*, this Court overruled *Mazza*'s holding that "no class may be certified that contains members lacking Article III standing." 31 F.4th at 682. *Olean* did "not overrule *Mazza* as to any other holding," and it emphasized that the remainder of *Mazza* "remain[s] good law." *Id.*

cases were decided under California class rules, the same logic extends to Rule 23 where the putative class encompasses uninjured individuals.[14]

***Article III Standing***. The same overbreadth problem defeats predominance where the presence of uninjured class members necessitates "individualized inquiries" into Article III standing. *Olean*, 31 F.4th at 669 n.12.

Article III requires "injury in fact," regardless of whether injury is a substantive element of the claim. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). That this case is a putative class action does not obviate Article III's requirements or excuse the presence of uninjured class members whose inclusion would require "individualized inquiries into [the] standing issue" that "predominate over common questions." *Olean*, 31 F.4th at 669 & n.12; *see Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action ... adds nothing to the question of

[14] *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015), which predated *Walker*, does not hold that class-wide entitlement to restitution is *necessarily* a common question. To the contrary, *Pulaski* cited cases in which this Court has held that individualized issues predominate where the class contains members who obviously suffered no injury. *See id.* at 986 & n.7.

standing ....”).[15] When “it appears that a large portion of the class does not have standing,” the need for individualized standing determinations defeat predominance. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019).

**2. Plaintiffs’ proposed class definition caused individualized questions to predominate.**

The putative class here includes many consumers who purchased the products for children over two and therefore could not have suffered injury from wrongly believing that the products were suitable for children under two. Contrary to Plaintiffs’ assertion that there is “no evidence regarding the number of class members who purchase[d] the Products for their child while the child was under two versus over two,” Op. Br. 48, Hain Celestial’s survey confirms that between 60% and 70% of respondents in each product category purchased the products

[15] The Supreme Court granted certiorari in *Laboratory Corp. of America Holdings v. Davis* to resolve a circuit split over “[w]hether a federal court may certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) when some members of the proposed class lack any Article III injury.” 145 S. Ct. 1133, 1134 (2025). It dismissed the case after oral argument without deciding that question. 605 U.S. 327 (2025).

*exclusively* for children two and older.[16] *See* 8-ER-1430 ¶ 108. As the district court explained, consumers in that group suffered no injury because they "got a product that delivers on the label's promises with respect to the child they bought it for." 1-ER-14.

Plaintiffs' crafting of the putative class to include these uninjured consumers defeats predominance.[17] To be entitled to restitution, a purchaser must have suffered harm from Hain Celestial's advertising. Article III requires the same: injury-in-fact traceable to Hain Celestial's actions, above and beyond a "bare procedural" injury. *Spokeo*, 578 U.S. at 341; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("[A]n

[16] By contrast, less than a quarter of respondents in each product category purchased the products exclusively for children under two. *See* 8-ER-1430 ¶ 108. And Plaintiff Ringler admitted that she continued to buy the products for her son after he turned two. *See* 4-ER-776–777.

[17] Although *Olean* rejected a bright-line rule that a class cannot contain more than a "de minimis" number of uninjured class members, 31 F.4th at 669 & n.12, it also held that a class cannot "include a great number of members who for some reason could not have been harmed," *id.* at 669 n.14. And while *Olean* did not define the precise point at which a class contains an impermissibly high number of uninjured class members, Plaintiffs' putative class fails under any conceivable test. For the same reason, it does not matter whether the district court "attempt[ed] to discern" the exact "number of class members [who] purchased the Products for children under two." Op. Br. 48 n.6. The undisputed evidence showed that the putative class included a significant number of consumers who purchased the products for children over two. Those class members suffered no injury due to any alleged regulatory violation.

injury in law is not an injury in fact.”). Yet putative class members who purchased the products for children over two suffered no injury, as there was no “difference between the product as labeled and the product as received.” *Khasin*, 119 F. Supp. 3d at 1154.

### 3. Plaintiffs’ contrary arguments are unpersuasive.

Plaintiffs’ primary responses are twofold: (1) that every purchaser of the products was injured by paying a “price premium” (Op. Br. 40); and (2) class-wide proof of deception and/or reliance is not required so lack of injury does not defeat predominance (*id.* at 41–47). Neither has merit.

***Price Premium***. On these facts, Plaintiffs’ price-premium theory is legally flawed. In contrast to the cases Plaintiffs cite, many purchasers of the products at issue here could not have been harmed. The *only* reason that the nutrient content claims here are allegedly unlawful is that the products are purportedly intended for children under two. Those who purchased the products for children over two would not have been injured, as they received exactly what they expected and what Hain Celestial promised.

*In re Folgers Coffee Marketing*, 159 F.4th 1151 (8th Cir. 2025), is instructive. Like Plaintiffs here, the plaintiff in *Folgers* contended that

individualized inquiries as to whether consumers paid a price premium were "unnecessary" because the label "spurred increased demand for Folgers products" and thus higher prices for all. *Id.* at 1157. The Eighth Circuit rejected that argument. *Id.* Accepting it, the court explained, "would allow those who suffered no ascertainable loss from Folgers's representations to piggyback on the injuries of others to pursue a remedy," which is inconsistent with Article III. *Id.*; *see also Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 988 (8th Cir. 2021) (affirming denial of certification and rejecting theory of injury based on "inflated purchase price," where plaintiffs alleged that "because some buyers did not receive the benefit of the bargain, all buyers should have paid less for their ATVs").

The same holds true here. After all, Plaintiffs do not (and cannot) dispute that each product contains all nutrients advertised on the label. Consumers who purchased the products for children over two therefore "got exactly what they had bargained for when they purchased the … products at issue." *Folgers*, 159 F.4th at 1156. These consumers cannot prove that "money or property 'may have been acquired by means of' the unlawful conduct." Op. Br. 39. They paid no "price premium," which is

the "proper measure of restitution in a food labeling case." *Khasin*, 119 F. Supp. 3d at 1154. And because the label was wholly accurate as to those purchasers, they cannot "piggyback" on the purported injury to purchasers for children under two. *Folgers*, 159 F.4th at 1157.

This case differs from one in which plaintiffs challenge a labeling claim—such as "natural" or "oil-free"—that is true or false as to every class member, so no individualized inquiry is necessary.[18] Here, by contrast, it is undisputed that the products' nutrient content claims are accurate as to purchasers for children over two. Certification of a class that included those class members is accordingly inappropriate. *See, e.g.*, *Otto v. Abbott Lab'ys, Inc.*, 2015 WL 12776591, at *3 (C.D. Cal. Jan. 28, 2015) (denying certification where defendant's alleged omission "could mislead those with deficient vitamin-D levels" but there was "no evidence that all purchasers" had deficient vitamin-D levels).

***Class-Wide Proof***. Plaintiffs are also wrong that the district court erred in requiring class-wide proof of deception and reliance, for several reasons. *First*, the district court did not require proof of deception, much

[18] *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854 (9th Cir. 2025) (Op. Br. 40), is thus distinguishable. It involved the representation "oil-free," a statement that is true or false as to all class members.

less class-wide proof. As the district court explained in denying leave to seek reconsideration, its statement in denying certification that "'those who bought the products for children two and up could not have been misled' might have been confusing." 1-ER-10. But "that language," which the district court later clarified, "did not change the conclusion underlying that order" that many absent class members cannot show they suffered harm from the allegedly unlawful aspect of the label. *Id.* This, the district court rightly concluded, made the "class overbroad." *Id.*

*Second*, the question of whether a claim under the UCL's unlawful-prong requires class-wide evidence of reliance is ultimately academic. Whether one frames the district court's conclusion in terms of reliance, Article III standing, or entitlement to restitution, the result is the same: class members who purchased the products for children *over* two suffered no cognizable injury, cannot establish a causal link between Hain Celestial's purported conduct and any injury, and thus have no viable claim.

*Third*, Plaintiffs' reading of California law on injury and reliance is wrong. Plaintiffs take issue with the district court's citation of *Shaeffer v. Califia Farms, LLC*, where the Court of Appeal affirmed an order

sustaining a demurrer to an unlawful-prong claim where the plaintiff had "not alleged that her decision to buy [the product] had anything to do with its calorie content" and therefore did not plead injury attributable to the alleged regulatory violation. 44 Cal. App. 5th 1125, 1143 (2020). Although *Shaeffer* involved statutory standing and did not address class certification (*see* Op. Br. 49), it nonetheless supports the district court's commonsense conclusion that there cannot be harm traceable to a defendant's conduct absent reliance on the purportedly unlawful aspect of the label.[19] 1-ER-8. *Downey* similarly holds that a class for an unlawful-prong claim cannot be certified unless the court can fairly infer that a defendant's conduct caused class-wide injury. 44 Cal. App. 5th at 1120–22; *see* 1-ER-9.

Plaintiffs cite four cases to support a contrary reading of California law: *Tobacco II*; *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir.

---

[19] As the California Supreme Court has explained, "reliance is the causal mechanism of fraud" in false advertising cases. *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009). Because the UCL's prohibition against unlawful, unfair, and fraudulent advertising is "disjunctive," a plaintiff in an unlawful-prong case need not show fraud. *Cel-Tech*, 20 Cal. 4th at 180. But the same causation rule holds: the injury that warrants restitution must result from the advertising, regardless of whether that advertising is allegedly fraudulent or unlawful.

2011); *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010); and *Bruton v. Gerber Products Co.*, 703 F. App'x 468 (9th Cir. 2017). All are inapposite.

In *Tobacco II*, the California Supreme Court held that the UCL's standing requirements do not apply to "absent class members in a UCL class action where class requirements have otherwise been found to exist." 46 Cal.4th at 324. But as a state court case, *Tobacco II* says nothing about whether a federal court can certify a class when many members lack Article III standing. *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) ("[T]o the extent that *Tobacco II* holds that a single injured plaintiff may bring a class action on behalf of a group of individuals who may not have had a cause of action themselves, it is inconsistent with the doctrine of [Article III] standing …."). Nor does *Tobacco II* speak to whether uninjured class members create a predominance issue with respect to restitution. And *Tobacco II* certainly did not "abrogate[]" the requirement of proving that class-wide injury is "susceptible of common proof." *Downey*, 44 Cal. App. 5th at 1120–21.

In *Stearns*, this Court cited *Tobacco II*'s holding that "relief under the UCL is available without individualized proof of deception, reliance

and injury." 655 F.3d at 1020 (quoting *Tobacco II*, 46 Cal. 4th at 320).[20] But this Court made clear not to "suggest that predominance would be shown in every California UCL case." *Id.*

Even if *Stearns* could be understood to hold that class certification does not require individualized proof of reliance, it did not dispense with Plaintiffs' ultimate burden to show class-wide injury caused by the purportedly unlawful label. Nor did it dispense with Plaintiffs' burden to show that they are entitled to a presumption of class-wide reliance. *See Walker*, 953 F.3d at 631. Indeed, this Court has been "careful to clarify" that a presumption of reliance "will not arise in every UCL case." *Id.* And even where an inference is appropriate, it does not "necessarily ... hold as to the entire class[] such that common questions predominate." *Lytle v Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1035 (9th Cir. 2024).

Next, *Steroid Hormone* held that individualized proof of reliance and causation was not needed before certifying a UCL class. 181 Cal. App. 4th 145. That holding made sense under that case's facts: The

[20] To the extent this Court suggested in *Stearns* that only the named plaintiffs needed to have Article III standing for a class to be certified (*see* 655 F.3d at 1021), this Court made clear in *Olean* that this is not the law. 31 F.4th at 668 n.12.

product contained an illegal controlled substance, so it "was illegal because of what it was," not because of "how it was labeled." *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *18 (N.D. Cal. June 13, 2014); *see also* 1-ER-10–11. By contrast, where the product is not inherently unlawful, class members must prove that the illegality affected their purchasing decisions. And again, because *Steroid Hormone* was a state court case, it did not address whether Rule 23 permits a federal court to certify a class that includes many uninjured purchasers.

Finally, Plaintiffs cite *Bruton*, 703 F. App'x at 472, as holding that deception is not an element of a UCL claim unless it is "an element of the predicate violation." Op. Br. 38. But Hain Celestial's position is not that deception is an element of an unlawful-prong claim. It is that class members who purchased the products for children under two could not have been *injured* by any purported unlawfulness, creating a fatal predominance problem. *Bruton* has nothing to say about that issue.

### B. The District Court Did Not Abuse Its Discretion in Declining to Reconsider Its Denial of Class Certification.

The district court did not err, as Plaintiffs insist (Op. Br. 48–51), in not allowing them to seek reconsideration of the class certification

decision. This Court reviews the district court's decision to deny Plaintiffs leave for abuse of discretion, *see Price v. Hawaii*, 921 F.2d 950, 954 (9th Cir. 1990), and there was none.

A motion for reconsideration is not "an opportunity to relitigate issues that have already been thoughtfully decided." *In re Google AdWords Litig.*, 2012 WL 1595177, at *1 (N.D. Cal. May 4, 2012) (interpreting Northern District of California Local Civil Rule 7-9, the vehicle under which Plaintiffs' motion would have been brought). To the contrary, reconsideration is reserved for "highly unusual circumstances" where "the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *see Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (defining clear error as requiring a "definite and firm conviction that a mistake has been committed").

Plaintiffs cite no newly discovered evidence and no intervening change in the law. They instead claim that the district court legally erred by treating deception and reliance as elements of a UCL's unlawful-prong claim. Op. Br. 45–48. Plaintiffs' argument is no more than an attempt to

"relitigate issues ... thoughtfully decided." *Google AdWords*, 2012 WL 1595177, at *1. Again, the district court did not deny class certification because of a lack of class-wide evidence of deception. As it explained in denying leave to seek reconsideration, and notwithstanding some loose language in the original order, the district court denied class certification because Plaintiffs' evidence did not support a presumption of class-wide injury—which California law requires. 1-ER-6–12; *see supra* at 59. And because Plaintiffs cannot show class-wide injury, they were not entitled to seek reconsideration.

### C. The District Court Did Not Abuse Its Discretion in Refusing to Certify a Narrower Class and Denying Plaintiffs' Class Certification Motion with Prejudice.

Plaintiffs assert that "the correct course of action" after denying class certification "would have been to narrow the proposed class, rather than flatly deny certification with prejudice." Op. Br. 51. But Plaintiffs cite no case holding that a district court abused its discretion by denying a plaintiff a do-over on class certification, particularly after the court determined the plaintiff grossly "overreach[ed]" in her initial motion. 1-ER-16. Moreover, the narrower class Plaintiffs sought leave to certify—consumers who purchased for children under two—is not certifiable.

Rule 23 gives district courts "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Gonzalez v. ICE*, 975 F.3d 788, 807 (9th Cir. 2020); *see also In re IPO Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) (recognizing district court's "discretion to consider (or to decline to consider) a revised class certification motion after an initial denial"). The district court properly exercised that discretion in denying Plaintiffs a second opportunity to seek class certification for at least two reasons.

*First*, in denying Plaintiffs a do-over, the district court correctly recognized several "serious concerns" with class certification that a narrower class definition would not cure. 1-ER-16. The class, even if narrowed to consumers purchasing for children under two, "covers over a dozen different products, even though there is little evidence in the record that is common to all of the products and even though not all class members purchased all of the products." *Id.* In addition, "individualized inquiries into what each class member saw before they purchased a given product," as needed to establish harm from the purported unlawfulness of the label, "would overwhelm issues common to the class." *Id.* These additional defects made it "unfair to put [Hain Celestial] through the

expense of allowing the plaintiff to start over." 1-ER-12. This was a quintessential exercise of the district court's discretion.

*Second*, Plaintiffs' damages model would not have allowed a factfinder to determine *which sales* were made to consumers who purchased for children under two, which is fatal to certification. *Cf.* *Walker*, 953 F.3d at 632–33 (Rule 23 "calls upon the district court to consider the likely difficulties of managing a class action," including under predominance and superiority prongs). The Supreme Court held in *Comcast* that "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [plaintiffs'] theory" and that, absent such a model, a putative class "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." 569 U.S. at 35. This Court has said the same: While Rule 23 does not impose a freestanding "ascertainability" requirement, the "aggregate amount of liability" must nonetheless "be determinable even if the identity of all class members is

not." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017).[21]

Here, there is no reliable way to calculate an aggregate amount of liability for a narrowed class, as Plaintiffs proffered no evidence from which the district court could have arrived at a reasonable estimate of *which* purchases were for children under two.[22] Even if one could use a consumption survey to estimate *how many parents* bought products for children under two, it would not allow Plaintiffs to specify with any exactitude *how many purchases* were made exclusively for the under-two segment, as needed to measure aggregate damages for a narrower class. This is because, in contrast to a case involving high-value items consumers purchase once, like cars or electronics, the products here are low-cost and oft-purchased, with frequency depending on myriad factors

---

[21] Courts routinely deny certification—including post-*Briseno*—where "logistical challenge[s]" make "estimating class damages impossible or highly unreliable." *Cover v. Windsor Surry Co.*, 2017 WL 9837932, at *9 (N.D. Cal. July 24, 2017); *see also Wetzel v. CertainTeed Corp.*, 2019 WL 3976204, at *20 (W.D. Wash. Mar. 25, 2019) (same result post-*Briseno*).

[22] *See Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 278 (S.D. Cal. 2023) (denying class certification where plaintiffs' damages model failed to "distinguish between injured class members and uninjured class members"); *Jensen v. Natrol, LLC*, 2020 WL 416420, at *1 (N.D. Cal. Jan. 27, 2020) (narrowing class to exclude uninjured consumers would make it impossible to generate a "reliable measure of aggregate damages").

one cannot readily model, such as number of children, their appetites, and their taste preferences. Rate of purchase is also unlikely to be static. A parent who occasionally bought the products for a child under two might well buy them more frequently once the child turns two.

In addition, Plaintiffs have not explained how their model accounts for consumers who purchased the products for their children both before and after they turned two. Indeed, Dr. Wilcox's survey indicates that between 13% and 17% of consumers purchased the products for children both over *and* under two. *See* 8-ER-1431 ¶ 110.

In short, Plaintiffs sought to certify an overbroad class that did not correspond to their theory of injury, and they forced Hain Celestial to incur hundreds of thousands of dollars responding to their class certification motion. Given that tactical choice and Plaintiffs' inability to proffer a revised damages model that could reliably measure damages attributable to a narrower class, the district court did not abuse its discretion by refusing to allow Plaintiffs to seek certification of a narrower class.

## IV. The District Court Did Not Abuse its Discretion in Declining to Certify a Rule 23(b)(2) Class.

Finally, the district court correctly held that Plaintiffs cannot pursue a class under Rule 23(b)(2). As an initial matter, Plaintiffs raised the possibility of an injunctive-relief class only in a footnote with an argument so perfunctory it should be considered waived. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 894 n.2 (9th Cir. 2011). This Court can affirm on that ground alone.[23]

But if it reaches the merits of the Rule 23(b)(2) argument, this Court should hold, as the district court did, that Plaintiffs lack standing to seek injunctive relief. Standing for injunctive relief requires a plaintiff to "demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged *in a similar way*.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *see DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240–41 (9th Cir. 2024) (finding plaintiff did "not

[23] Plaintiffs assert that the district court declined to certify the Rule 23(b)(2) class "*sua sponte*, without briefing on the matter." Op. Br. 21. That is wrong. Plaintiffs elected to request certification of a Rule 23(b)(2) class in a footnote (*see* 2-SER-360–361 n.6), and Hain Celestial devoted a page and a half of its opposition brief to opposing that request (*see* 2-SER-333–334).

have standing to seek injunctive relief" where he did not submit evidence about "his desire to purchase Meta advertisements in the future" and did not show he would be "wronged in a similar way"). The threatened injury cannot be "based on hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013). Thus, a "previously deceived plaintiff" only has "standing to seek injunctive relief" if she "faces an imminent or actual threat of future harm caused by [the] allegedly false advertising." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018).

Plaintiffs are wrong that this standard requires only that "they would purchase the Products again." Op. Br. 55. Standing for injunctive relief requires more than a "bare procedural violation" of a statute or regulation—assuming such a violation, of which there was none—"divorced from any concrete harm." *Spokeo*, 578 U.S. at 340. Plaintiffs must show they: (1) "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to"; or (2) "might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was

improved." *Davidson*, 889 F.3d at 969–70. Here, that means Plaintiffs would need to show not only that they desired to purchase Hain Celestial's products in the future for children under two, but also that they would do so based on the products' perceived suitability for children under two.

Plaintiffs failed to make that showing for at least two reasons:

*First*, as the district court held (1-ER-15), Plaintiffs face no imminent or actual risk of future harm because they now "know[] full well" that the FDA prohibits the use of nutrient content claims on the products (at least under their own theory). *Heagney v. John Paul Mitchell Sys.*, 2023 WL 4947974, at *3 (N.D. Cal. Aug. 2, 2023) ("You can't be misled by—or even uncertain about—something that you know is wrong"); *see also Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) (finding no standing to seek injunctive relief where even if plaintiff was "misled by the 'No Sugar Added' statement ... he is now aware that such a belief was unfounded").

This is not a situation, as in *Davidson*, in which Plaintiffs "will be unable to rely on the product's advertising or labeling in the future" or one in which Plaintiffs "may reasonably, but incorrectly, assume the

product was improved." *Davidson*, 889 F.3d at 969–70 (finding standing where the plaintiff alleged she could not assess the label's truthfulness without using the product again). Here, as in this Court's recent decision in *Kenney v. Fruit of the Earth, Inc.*, Plaintiffs "need not purchase the [product] again" to determine whether the nutrient content claims are unlawful, at least under Plaintiffs' theory. 2024 WL 4578981, at *1 (9th Cir. Oct. 25, 2024). Plaintiffs' claim is that nutrient content claims are categorically unlawful on products intended specifically for children under two. They face no risk that these claims will lead them to believe that the products are nutritionally appropriate for children under two and therefore have no standing to pursue injunctive relief. *Id.*

*Second*, Plaintiffs face no imminent or actual risk of future harm because they no longer have children under two and provided no evidence that they intend to have additional children. *See* 1-ER-15. Plaintiffs argue that this fact does not matter because their claims are "inherently transitory," and the "natural march of time" does not deprive them of standing. Op. Br. 55–56. But the only case Plaintiffs cite—*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991)—is a mootness case that holds that the passage of time will not moot a case that was live when

filed. The problem here is not mootness, it is standing for injunctive relief, and nothing in *McLaughlin* says a plaintiff can seek injunctive relief when he or she faces no risk of future injury. Plus, any such conclusion would run headlong into a mountain of Supreme Court and Ninth Circuit precedent holding the opposite.

Because Plaintiffs lack standing to pursue claims on their own behalf, they also lack standing to seek an injunction on behalf of a putative class. *See Hodgers-Durgin*, 199 F.3d at 1045. The district court therefore did not err in declining to certify an injunctive relief class under Rule 23(b)(2).

## CONCLUSION

This Court should affirm the judgment below.

Dated: January 26, 2026

Respectfully submitted,

/s/ Dean N. Panos
Dean N. Panos
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
T: 312-222-9350
dpanos@jenner.com

*Attorneys for Defendant-Respondent The Hain Celestial Group, Inc.*

## STATEMENT OF RELATED CASES

Defendant-Appellee The Hain Celestial Group, Inc. certifies that there are no related cases pending in this Court within the meaning of Circuit Rule 28-2.6.

Dated: January 26, 2026

/s/ Dean N. Panos
Dean N. Panos

## CERTIFICATE OF COMPLIANCE

I, Dean N. Panos, hereby certify as follows:

1. The foregoing brief complies with the type-volume limitation of Circuit Rule 32-1(a). Excluding the portions of the brief required by Federal Rule of Appellate Procedure 32(f), there are 13,878 words in the brief according to the word count function of Microsoft Word for Microsoft 365, the word processing program used to prepare the brief. Including the words in the illustrations in the brief that are intended to be read by the Court (which are set off in red highlighting and were counted manually), the total word count of the brief is 13,892 words, which does not exceed Circuit Rule 32-1(a)'s type-volume limitation.

2. The foregoing brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in 14-point Century Schoolbook font.

Dated: January 26, 2026

/s/ Dean N. Panos
Dean N. Panos

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 26, 2026, that all participants in the case are registered CM/ECF filers, and that service will be effected using the appellate CM/ECF system.

Dated: January 26, 2026

/s/ Dean N. Panos
Dean N. Panos