No. 25-1919

# In The United States Court of Appeals For the Ninth Circuit

TRACY HOWARD, ADINA RINGLER, & TRECEE ARTIS
*Plaintiffs-Appellants,*
v.

HAIN CELESTIAL GROUP, INC.,
*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern District of California, Honorable Vince Chhabria, presiding

**REPLY BRIEF FOR PLAINTIFFS-APPELLANTS**

SETH A. SAFIER
HAYLEY A. REYNOLDS
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 639-9090

MATTHEW T. MCCRARY
GUTRIDE SAFIER LLP
4450 Arapahoe Ave., Suite 100
Boulder, CO 80303
(214) 502-2171

*Attorneys for Plaintiffs-Appellants*

No. 25-1919

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. The Regulation Applies to Foods that Are Intended in Particular for Children Under Two. ..... 3

1. The Plain Meaning of "Specifically" Includes "Particularly." ..... 3

2. The Purposes of the Regulation Confirm that "Specifically" Is Not Limited to "Exclusively" or "Primarily." ..... 5

B. Plaintiffs Presented Issues of Material Fact that Preclude Summary Judgment. ..... 9

1. Plaintiffs Established a Triable Issue of Fact on Economic Injury ..... 13

C. Plaintiffs' UCL Class Claim Should Have Been Certified. ..... 16

1. The District Court Committed Legal Error When It Required a Showing of Classwide Reliance for Plaintiffs' UCL Claim. ..... 16

2. The Class Is Sufficiently Cohesive to Satisfy Rule 23 ..... 17

3. All Class Members Were Exposed to Defendant's Unlawful Label Claims and therefore All Class Members "May Have" Lost Money ..... 19

4. The District Court Abused Its Discretion Because It Did Not Analyze Whether More than a De Minimis Number of Consumers Purchased for Children Over Two. ..... 20

5. Hain Misapplies Case Law ..... 22

6. The District Court Should Have Certified a Narrower Class ..... 24

7. All Class Members Have Article III Standing ..... 24

D. Plaintiffs Have Standing to Pursue Injunctive Relief. ..... 25

III. CONCLUSION ..... 27

TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) ... 16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ... 13, 14

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) ... 22, 23, 24

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ... 26

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ... 26

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App. 4th 663 (2006) ... 11

*Davis-Miller v. Auto. Club of S. Cal.*,
201 Cal. App. 4th 106 (2011) ... 23

*DOC v. New York*, 588 U.S. 752 (2019) ... 25

*Downey v. Pub. Storage, Inc.*,
44 Cal. App. 5th 1103 (2020) ... 22, 23

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ... 26

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ... 14

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ... 15, 16

*Jackson v. Ca Dep't of Mental Health*,
399 F.3d 1069 (9th Cir. 2005) ... 26

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ... 22, 23, 24

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ... 12

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) ... 14

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ... 10

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
31 F.4th at 669 (9th Cir. 2022) (en banc) ... 25

*Parra v. Bashas', Inc.*,
536 F.3d 975 (9th Cir. 2008) ... 16

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) .................................................. 14, 20

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) .................................................. 7

*Rickards v. Canine Eye Registration Found., Inc.*,
704 F.2d 1449 (9th Cir. 1983) .................................................. 14

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) .................................................. 18

*Sevidal v. Target Corp.*,
189 Cal. App. 4th 905 (2010) .................................................. 17

*Shanks v. Jarrow Formulas, Inc.*,
No. LA CV 18-09437 PA (AFMx), 2019 U.S. Dist. LEXIS 227427
(C.D. Cal. Dec. 27, 2019) .................................................. 15

*Sorin v. Folger Coffee Co. (In re Folgers Coffee Mktg. Sharel Mawby)*,
159 F.4th 1151 (8th Cir. 2025) .................................................. 21

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) .................................................. 16, 19

*Tucker v. Pac. Bell Mobile Servs.*,
208 Cal. App. 4th 201 (2012) .................................................. 23

*Tucson v. City of Seattle*,
91 F.4th 1318 (9th Cir. 2024) .................................................. 26

*United States v. Dish Network L.L.C.*,
954 F.3d 970 (7th Cir. 2020) .................................................. 9

*Walker v. Life Ins. Co. of the Sw.*,
953 F.3d 624 (9th Cir. 2020) .................................................. 25

**Statutes**

21 U.S.C. § 343(r)(2)(B) .................................................. 7

Cal. Bus. & Prof. Code § 17203 .................................................. 16

**Regulations**

21 C.F.R. § 101.13(b)(3) .................................................. 1, 3, 5

56 Fed. Reg. 60366 .................................................. 7

56 Fed. Reg. 60421 .................................................. 6, 7

56 Fed. Reg. 60423 .................................................. 6

56 Fed. Reg. 60424 .................................................. 6, 7

58 Fed. Reg. 2302 .................................................. 6, 8

58 Fed. Reg. 2302-03 .................................................. 6

58 Fed. Reg. 2304 .................................................. 8

58 Fed. Reg. 2305 .................................................. 8

## I. INTRODUCTION

The first issue on appeal turns on a straightforward question of regulatory interpretation. FDA regulations and California's Sherman Law prohibit nutrient content claims on foods "intended specifically for use by infants and children less than 2 years of age." 21 C.F.R. § 101.13(b)(3). Applying ordinary tools of interpretation, that language is unambiguous: "specifically" means particularly or precisely—not exclusively or primarily. A product intended for children under two may not bear nutrient content claims, regardless of whether it is also consumed by older children. The district court erred by rewriting the regulation to impose an "intended primarily for" standard that appears nowhere in the text and undermines the regulation's purpose.

In the proceedings below, the district court acknowledged that Plaintiffs introduced "strong evidence" showing that Hain specifically intended the challenged products to be consumed by children under two. Nevertheless, the district coiurt granted summary judgment to Hain by adopting an atextual interpretation of "specifically" and resolving factual inferences in Hain's favor. The district court's summary judgment order should be reversed to correct these errors. Under the correct legal standards, a reasonable jury could readily conclude that the Products were specifically intended for children under two.

As an alternative basis for defending the summary judgment decision, Hain argues that Plaintiffs failed to produce sufficient evidence of the amounts of their economic injuries. But California law requires only a reasonable basis for calculating restitution, not exact precision. Plaintiffs satisfied that standard through

expert testimony establishing a price premium attributable to the unlawful nutrient content claims, and by reliable retail pricing data and Plaintiffs' own purchase testimony. Hain's demand for individualized proof of exact expenditures imposes a burden the law does not require.

Legal errors also permeated the district court's class-certification analysis. Ninth Circuit and California Supreme Court precedent make clear that UCL unlawfulness claims do not require proof of classwide deception or reliance. Nevertheless, the district court denied certification based on an erroneous requirement that Plaintiffs show it would be "fair to infer" reliance by absent class members. That mistaken premise led the court to deem the class overbroad without conducting the predominance analysis Rule 23 requires. Because all class members were uniformly exposed to the same unlawful labeling and restitution can be measured through common proof, the proposed class should have been certified.

Finally, the district court erred in dismissing Plaintiffs' claims for injunctive relief. Plaintiffs alleged and testified that they would purchase the products again if they could rely on lawful labeling, which is sufficient to establish Article III standing. The district court's focus on whether Plaintiffs currently have children under two misconstrued both the standing doctrine and the nature of Plaintiffs' unlawfulness claims, which do not turn on deception or future confusion.

In short, this case should be decided on behalf of a class by applying the regulation as written. Because the district court departed from both principles, its judgment should be reversed and the case remanded for further proceedings.

## II. ARGUMENT

### A. The Regulation Applies to Foods that Are Intended in Particular for Children Under Two.

Pursuant to Congress's delegation of authority in the Nutrition Labeling and Education Act (NLEA), the FDA promulgated regulations that clearly state that "no nutrient content claims may be made on food *intended specifically for use by infants and children less than 2 years of age* . . .." 21 C.F.R. § 101.13(b)(3) (emphasis added). The parties agree that "[t]he threshold question, then, is what it means for a product to be 'intended specifically' for children under two, as that phrase is used in section 101.13(b)(3)." Ans. Br. at 28. The plain meaning of this language, as well as the context and purpose of the regulation, establish that the Products at issue are intended specifically for children under two if they are intended in a definite or particular way for such children.

#### 1. The Plain Meaning of "Specifically" Includes "Particularly."

Defendant agrees that "specifically" means "[i]n a specific or definite form or manner," "precisely, explicitly, particularly," or "with a particular or clearly defined purpose," acknowledging that the parties are reading the same dictionaries. Ans. Br. at 29. Applying the undisputed definition of "specifically" here, a product is intended specifically for children under two where it is, in a definite or particular way, intended for children under two. Accordingly, if a product is intended specifically—i.e., definitely or particularly—for use by children under two, the product cannot make a nutrient content claim. Notably, the definition of "specifically" does *not* require that the indications that the product is for a child

under two be to the exclusion of others. Contrary to what Hain suggests, a product can be specifically (or particularly or definitely) intended for children under two, even if it is also intentionally sold to consumers purchasing for children over that age.

For example, suppose Jack loves chocolate cake with chocolate icing, and is allergic to all other flavors. If Jane bakes a chocolate cake with chocolate icing specifically intending to suit Jack's needs and preferences, it does not mean that no one else can eat the cake. Instead, by choosing Jack's favorite ingredients that he can eat, Jane has made the cake particularly (or "specifically") for Jack, even though others at Jack's party may also enjoy the cake. Similarly, the Products here are "intended specifically" for children under two because, among other things, they are a pureed food that is commonly used to introduce babies to solid food for the first time; they are sold in "Baby Food" aisles; and Hain explicitly and repeatedly acknowledged in internal documents that the Products were intended for babies and toddlers. The fact that an older child may also eat a pureed food, and the fact that Defendant may be happy to sell its products to anyone who likes them, does not mean that the food is not specifically, i.e., particularly, intended for children under two.[1]

---

[1] Contrary to what Defendant suggests, Plaintiffs do not argue that the word "specifically" is meaningless. Plaintiffs simply maintain, consistent with common usage, that there can be evidence that a product can be (and is) "intended specifically" for one group even if it is also generally available to and consumed by others. *Compare* 21 C.F.R. § 101.13(a) (referencing "foods that are intended for human consumption") *with* 21 C.F.R. § 101.13(b)(3) (governing foods "intended specifically for" children under two).

Despite its acknowledgement of the ordinary meaning of "specifically," Defendant attempts to redefine "specifically" to mean "exclusively." Defendant would require that the intended market for a product *exclude* children older than two years old for the regulation to apply. *See* Ans. Br. at 29-30 (arguing that "a product is *not* intended specifically for children under two if intended for young children generally, including both children over and under two") (emphasis in original). But that is not what the regulation says.

Similarly, in concluding that "specifically" means "primarily" for purposes of this regulation (even while recognizing that the terms generally have different meanings), the district court did not apply the common understanding and usage of the language used by the FDA; instead, it used different and additional language to erroneously restrict the application of the regulation.

### 2. The Purposes of the Regulation Confirm that "Specifically" Is Not Limited to "Exclusively" or "Primarily."

In promulgating Section 101.13(b)(3), the FDA sought to reduce the risk that consumers would be misled (a) about nutrient content claims generally and (b) about whether certain levels of nutrients were "appropriate and recommended" for children under two in particular. Both of these regulatory objectives further confirm that, for purposes of this regulation, "specifically" means "particularly" (ensuring adequate protection to consumers) and not "exclusively" or "primarily" (which would restrict the application of the regulation and undermine its protective goals).

In proposing the regulation, the FDA first explained that it has the authority to prohibit labeling that:

> (1) Is false or misleading in that it fails to reveal material facts with respect to consequences that may result from use of the food and (2) uses terms to characterize the level of any nutrient in a food that have not been defined by regulation by FDA.

56 Fed. Reg. 60421, 60423. The FDA then explained its reasoning for the prohibition of nutrient content claims on products intended specifically for children under two:

> [T]he agency lacks evidence that a more restrictive dietary pattern for other nutrients such as sodium or an increased intake for nutrients such as fiber are **appropriate and recommended** for infants and toddlers. Therefore, until the agency has information that such dietary patterns are **appropriate** for children and support adequate growth and development, FDA is proposing . . . that nutrient content claims may not be made on foods **intended specifically** for use by infants and toddlers less then 2 years of age.

56 Fed. Reg. 60421, 60424 (emphases added).

The FDA was clearly concerned that consumers could be misled about what nutrient levels were "appropriate and recommended" for children under two, which is consistent with its stated directive to prevent labeling that is "false or misleading in that it fails to reveal material facts" and "to eliminate consumer confusion." 56 Fed. Reg. 60421, 60424; 58 Fed. Reg. 2302, 2302-03. Prohibiting nutrient content claims on foods that are intended specifically (i.e., definitely or particularly) for use by children who are under two—even if those foods are also consumed by three- and four-year-olds—serves those goals and protects those younger children. Hain cannot show otherwise.

Hain incorrectly suggests that the FDA encourages nutrient content claims as a matter of policy, and that any prohibition on such claims should be construed narrowly. *See* Ans. Br. at 32–33. Not so. The FDA's recognition that information *required to be stated in the nutrition facts panel* ("NFP") "can assist consumers in selecting foods that can lead to healthier diets" is completely compatible with the FDA's strict regulation of nutrient content claims that appear *elsewhere* on food labels. *See* 56 Fed. Reg. 60421, 60424 (noting that information inside the NFP is not subject to the regulations applicable to nutrient content claims, but the same information appearing elsewhere on a food label is subject to claims regulation). This is because nutrient content claims are a "marketing activity," while the NFP is "a tool for educating or assisting consumers in planning a healthy diet." 56 Fed. Reg. 60366. Accordingly, NFPs are required on all foods (no matter what age they are intended for), while nutrient content claims are tightly regulated and only defined terms are permitted on labels. This Court has observed, "the general rule is that 'nutrient content claims' are not permitted on food labels." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015); *see also* 21 U.S.C. § 343(r)(2)(B) (only defined terms may be used on labeling). As a result, Hain's contention that "[i]t would make no sense for the FDA to prohibit nutrient content claims on products intended for consumption by a broad audience" (Ans. Br. at 33) is misguided.

Equally unavailing is Hain's contention that "the FDA used 'primarily' as a synonym for 'specifically.'" Ans. Br. at 31. The FDA did no such thing. During the notice of rulemaking, a *commenter* complained that the regulation "would unfairly

restrict nutrient content claims on foods primarily intended for infants and children less than two years of age while allowing such claims on products that, though aimed primarily at adults and older children, are actively promoted either on the label or in the advertising as being for use by infants or children less than 2 years of age." 58 Fed. Reg. 2302, 2304. The FDA responded that it "has not prohibited claims on foods that are promoted for infants and children under the age of 2 but that are intended primarily for adults and older children," but cautioned "that any nutrient content claims made on such products in association with a statement about use of the food for infants and children under the age of 2 would be misleading under section 403(r) of the act unless such claim has specifically been permitted for such a population by regulation." 58 Fed. Reg. 2302, 2305.

Nothing in this section of the Federal Register purports to redefine "specifically" to mean "primarily." To the contrary, the agency declined to amend the regulatory text at all—confirming that the words it chose mean what they say. In paraphrasing and responding to certain comments, the FDA was not interpreting the at-issue text or explaining its purpose, but instead was quelling the fears of the commentor worried about "unfairly" being restricted. In doing so, the FDA mirrored the language used in the comment and described foods that are "intended primarily for adults and older children" as being outside the bounds of the prohibition. 58 Fed. Reg. 2302, 2305. The meaning of "specifically" was not the focus of the comment and the FDA did not attempt to define that term; it certainly did not interpret "specifically" in the manner that Defendant suggests (that foods intended "specifically" for children under two means *only* foods that are intended

"exclusively" or "primarily" for children under two). Thus, even if the FDA's rule-making discussion were due deference on some other point, it is not due any deference for what "specifically" means. *See United States v. Dish Network L.L.C.*, 954 F.3d 970, 979 (7th Cir. 2020) (declining to defer to agency comments in the federal register that did not interpret the rule text and were inconsistent with the plain meaning of the rule).

### B. Plaintiffs Presented Issues of Material Fact that Preclude Summary Judgment.

The district court all but admitted there were issues of material fact when it concluded "plaintiffs put forward strong evidence—in particular, Hain's internal presentations—showing that Hain intends the products to be consumed by children under two. If 'intended specifically for' meant 'intended for' or 'actively promoted to,' the plaintiffs would get to go to trial (or would maybe even win on summary judgment)." 1-ER-4.

The record presents a textbook jury question: whether Hain specifically intended these Products to be consumed by children under two. Plaintiffs' evidence that Hain intended the Products to be specifically for children under two falls broadly into two categories: external (e.g., the label, the contents of the product, and the product pouch format) and internal (e.g., retailer presentations and internal communications). Both categories, at a minimum, create a factual dispute regarding whether the Products are intended specifically (i.e., particularly) for children under two. Tellingly, Hain cannot point to *any* internal evidence that supports its argument that the Products are intended specifically for children *over*

two. Hain even admits that "the evidence Plaintiffs cite establishes that Hain Celestial 'actively promote[s]' the products as being 'for use by … children less than two years of age.'" Ans. Br. at 40. Hain's attempts to justify the district court's summary judgment order, despite this evidence, fall short.

Hain starts by insisting its back label disclaimer "precludes a finding of specific intent." Ans. Br. at 34. Nonsense. First, the supposed "disclaimer" on the back label is inconspicuous, if not microscopic, and is unlikely to ever be seen by "a parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, who is not likely to study with great diligence the contents of a complicated product package." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 884 (9th Cir. 2021) (internal quotation and citation omitted). An example of a label containing the "disclaimer" is below:[2]







[2] Images copied from 4-ER-653. An image of a sample back label is conspicuously absent from Hain's argument that its back-label disclaimer is sufficient in itself to prevent Plaintiffs' claims from reaching a jury.

Rather than being evidence of intent, the disclaimer is better fodder for a "find it" puzzle: Can you spot the disclaimer?[3] Furthermore, while a label may be the "primary evidence" in cases evaluating whether a reasonable consumer would be misled by a label (*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006)), here, the question is not what a reasonable consumer believes, but rather: what did Defendant *intend.* Internal presentations are therefore just as probative (if not more) as labels for determining whether Hain intended the Products be purchased particularly for children under two.

Hain's suggestion that the back label clarifies "ambiguity" about "the age of the children for whom it is intended" backfires for at least two reasons. Ans. Br. at 34. First, the argument serves as a tacit admission that the label is, at best, ambiguous regarding the age for which the Products are intended. The label does not and cannot establish Defendant's intent as a matter of law if it is in fact ambiguous. Second, Hain's invocation of *McGinity* is wildly misplaced. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023) permits consideration of materials outside the label when assessing if a front label claim is ambiguous for purposes of consumer deception. However, Plaintiffs do not argue that the labels mislead consumers as to the age for which the Products are intended—indeed the fraud claims are not the subject of this appeal. Thus, whether a *consumer* would look to the back label does not answer the question of what *Hain* intended, and *McGinity* therefore does not apply here.

---

[3] Hint: Look above the NFP.

Hain's attempt to establish its intent by pointing to how it labels products that are *not* at issue is also insufficient to establish its intent as a matter of law. *See* Ans. Br. at 36. A more plausible interpretation (and one the Court must draw in favor of Plaintiffs as the nonmovants) is that these labels show that Hain knows how to communicate the age for which the products are intended: on the front label. *See* Ans. Br. at 36 (displaying labeling intended for children 6+ months as stated in red banner on top right corner of product). The Products at issue here bury the age disclaimer in small font on the back label. Thus, if anything, the comparison of the two product lines demonstrates that Hain did *not* truly intend to limit the Products to children *over* two; rather, Hain included the disclaimer in a cynical attempt to sidestep the regulations and allow it to gain a competitive advantage.

Hain also cites evidence that its website, accessed Nov. 12, 2024, now includes the "ages 2+" disclaimer under the word "toddler." However, Hain offers no explanation as to when those disclaimers were added online. At the time Plaintiffs filed their complaint, these disclaimers did not exist on its website. *See* 4-ER-611. Statements added to a website in response to litigation are far from conclusive evidence of Defendant's actual intent when it marketed and sold the Products throughout the class period.

Hain's survey evidence fares no better. First, the survey asked respondents about their *last* purchase of the Products. But the first purchase is more informative as to whether consumers are purchasing for children under two (particularly given that children grow up). Second, the survey asked about who consumed the

Products. Yet the injury occurred at the time of purchase and therefore who ultimately consumes the Products is not probative.

Hain does not rebut the district court's recognition that the dozens of retailer presentations were "strong evidence" of Hain's intent. Instead, Hain points to a single internal presentation that actually contradicts itself by presenting the pouch Products as being for children 12-18 months on one slide (13-ER-2800) and then later stating they are for "toddlers 2 years and older" on another (13-ER-2811). *See* Ans. Br. at 39 (citing 13-ER-2811). All of the above underscores the most salient point, a "fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Accordingly, the district court's order granting summary judgment in favor of Hain should be reversed.

#### 1. Plaintiffs Established a Triable Issue of Fact on Economic Injury

In calculating damages or restitution, "California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015). Summary judgment is appropriate only where plaintiffs have no testimony, expert witnesses, or documents providing evidence from which a jury could estimate damages. *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1452 (9th Cir. 1983); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988)

(Plaintiff need only "provide evidence such that the jury is not left to 'speculation or guesswork' in determining the amount of damages to award").

Here, Plaintiffs seek to recover the price premium associated with the at-issue label claims, which is "well-established" as the "valid measure of damages" in this case. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104 (N.D. Cal. 2018). To do so, Plaintiffs' expert isolated the value that consumers in the relevant market attached to the at-issue unlawful label claims using a conjoint analysis. 3-ER-80 ¶ 12. Thus, to determine Plaintiffs' damages, Plaintiffs will multiply the price premium factor by the price paid for the units each Plaintiff purchased.

Plaintiffs each testified that they purchased Products on at least one occasion. 2-ER-45:8 17, 2-ER-46:16 21, 2-ER-47:3 6, 2-ER-48:20 22, 2-ER-49:17 50:1, 2-ER-50:23 25 (Ringler); 2-ER-58:1 13 (Artis); 2-ER-69:7 23, 2-ER-70:11 20 (Howard). Nothing more is required. *See Anderson*, 477 U.S. at 255 (At summary judgment "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [their] favor.").

Hain does not dispute that Plaintiffs have put forth evidence of restitution—that is, the amount of money that may have been acquired as a result of the unfair competition. *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009). Nor does Hain dispute that Plaintiffs have put forth evidence that they each purchased the Products on at least one occasion. Instead, Hain's sole complaint is that Plaintiff "produced no documentary evidence of the number of products they purchased or the amount they spent." Ans. Br. at 42. This argument is both a misapplication of law and misstatement of the record.

Hain argues that Plaintiffs cannot rely on the average price, which varied only a few cents for each time period, because "it is not evidence of the amount Plaintiffs paid." Ans. Br. at 44. Plaintiffs relied on evidence from Information Resources, Inc. (now known as Circana) which shows the pricing data in California for each product during the period Plaintiffs purchased them. According to the data, Plaintiff Ringler paid between $1.41 and $1.44 for the apple blueberry smoothie pouches. 2-ER-26 ¶ 6. Plaintiff Artis paid between $2.10 and $2.19 for the chicken casserole pouch. *Id.* And Plaintiff Howard paid between $1.44 and $1.53 for the peach banana smoothie pouches. *Id.* Hain's documents corroborate these prices. *See* 12-ER-2391 (showing MSRP of relevant pouches in or around Dec. 2019). Thus, Plaintiffs did in fact put forth evidence of the amount they paid.

Defendant cites no Ninth Circuit cases to support its argument, and its single district court case is distinguishable. In *Shanks v. Jarrow Formulas, Inc.*, No. LA CV 18-09437 PA (AFMx), 2019 U.S. Dist. LEXIS 227427, at *11 (C.D. Cal. Dec. 27, 2019), the court granted summary judgment because plaintiff presented no evidence, "expert testimony or otherwise" of damages. *Id*. By contrast, here, Plaintiffs produced a spreadsheet of monthly average prices paid by consumers in California and identified the dates they first purchased the Products. Plaintiffs' expert has calculated the difference in the price paid and the actual value of the Product without the unlawful claims. 3-ER-80 ¶ 12. Therefore, unlike *Shanks*, Plaintiffs have sufficient evidence to get to trial on their restitution claims.

### C. Plaintiffs' UCL Class Claim Should Have Been Certified.

This Court reviews a district court's class certification decision for abuse of discretion. *Parra v. Bashas', Inc.*, 536 F.3d 975, 977 (9th Cir. 2008). "[A]n error of law is a per se abuse of discretion." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013) (citation omitted).

#### 1. The District Court Committed Legal Error When It Required a Showing of Classwide Reliance for Plaintiffs' UCL Claim.

The district court committed a threshold legal error by denying certification of Plaintiffs' UCL unlawfulness claim on the ground that Plaintiffs failed to show it would be "fair to infer" reliance by absent class members. Binding caselaw establishes that "relief under the UCL is available without individualized proof of deception, reliance and injury." *Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1020 (9th Cir. 2011) (citing *In re Tobacco II Cases*, 46 Cal. 4th at 320). This is because the UCL does not have a traditional causation element but instead allows a court to award restitution to anyone who "may have" lost money by means of a defendant's unfair business practices. Cal. Bus. & Prof. Code § 17203; *see also Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 924 (2010) ("[T]his standard focuses on the defendant's conduct and is substantially less stringent than a reliance or 'but for' causation test.").

In analyzing the UCL claim, the district court committed reversable legal error when it concluded that "because the plaintiffs are bringing these claims on behalf of a proposed class, they must also show that it would at least be fair to infer

that the rest of the class similarly relied on the alleged misrepresentation." 1-ER-14; *see also* 1-ER-9. That premise is flatly wrong. Plaintiffs are not required to establish class member reliance, or an inference of reliance, for a UCL class claim. Instead, they are required to show only that the class "may have" lost money by means of defendant's unlawful practice. If the class was uniformly exposed to the unlawful claims, then the proposed class is sufficiently cohesive to warrant adjudication by representation.

Hain concedes that its "position is not that deception is an element of an unlawful-prong claim," implicitly admitting the district court's error. Ans. Br. at 60. The district court's legal conclusion cannot be reconciled with controlling authority and, standing alone, requires reversal and remand.

### 2. The Class Is Sufficiently Cohesive to Satisfy Rule 23

Hain does not defend the district court's standard, instead agreeing only with its result. Instead, Hain offers an alternative justification for the denial of class certification: that inclusion of uninjured class members rendered the class overbroad. Ans. Br. at 46.

Preliminarily, Hain is not applying the correct standard of review to the district court's class certification decision. Hain cannot prop up the denial of class certification by recasting the district court's legal error as harmless. Instead, the Court must reverse and remand for further proceedings consistent with the correct legal standard. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006-07 (9th Cir. 2018) ("Because the district court applied the wrong standard for evaluating the

plaintiffs' evidence, we do not reach whether the plaintiffs have in fact demonstrated typicality and leave it to the district court to resolve in the first instance.").

Hain states that "the question of whether a claim under the UCL's unlawful-prong requires class-wide evidence of reliance is ultimately academic. Whether one frames the district court's conclusion in terms of reliance, Article III standing, or entitlement to restitution, the result is the same." Ans. Br. at 56. The question is not "academic;" it is the lynchpin of the legal error in the district court's decision. The district court did not analyze overbreadth as an issue of Article III standing or injury. *See* 1-ER-6-16. Instead, it was clear in its (erroneous) analysis: "Viewed in light of these two principles—first, that unlawful-prong claims require a showing of reliance on the aspects of a label that make it unlawful; and second, that in a class action it must be fair to infer reliance on the part of absent class members—the plaintiffs' proposed class was overbroad with respect to their unlawful-prong claim." 1-ER-9. The district court exclusively rested its conclusion on reliance—a standard that Hain has chosen not to adopt in its argument on appeal.

Hain's application of the law to consider whether individual issues predominate as to class members' injury requires this Court to review the issue de novo, which is improper. But Plaintiffs nevertheless address the arguments here should the Court be inclined to consider them.

### 3. All Class Members Were Exposed to Defendant's Unlawful Label Claims and therefore All Class Members "May Have" Lost Money

This Court observed that by enacting the UCL, "California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy." *Stearns*, 655 F.3d at 1021 n. 13. But regardless of why the bait is tainted (unlawful, unfair, or fraudulent), the required predominance elements are the same in class certification: establish the conduct violates the UCL, establish that all class members were exposed to the same conduct, and establish that the measure of restitution is uniform for class members.

Here, whether the labeling is unlawful is necessarily a common question; Hain does not argue otherwise. Nor does Hain take issue with the proposed measure of restitution. Hain's sole argument is that the class contains uninjured class members—not because they were not exposed to the labeling statement—but because they may have purchased the Products for a child over two. In other words, Hain argues that class members' motivation for purchasing the Products may have differed.

This misapplies the law. First, the question of *who* a consumer purchased the Product for is not relevant to determining whether the conduct was unlawful. *Pulaski & Middleman*, 802 F.3d at 989. The class members were all exposed to the claims, therefore they "may have" lost money as a result. Second, by arguing that "consumers who purchased the products for children over two . . . could not have suffered injury from wrongly believing that the products were suitable for under

two," Hain changes the unlawfulness claim into a fraud claim. Ans. Br. at 51. Plaintiffs do not allege consumers were misled about whether the product was intended for children under two. The at-issue regulation does not state that manufacturers can make claims on products intended for children under two and over two so long as consumers are not misled about whether the products are intended for children under two.

This Court must reject Defendant's attempt to shoehorn its theory of fraud into the injury analysis. The ultimate conclusion remains: The district court committed legal error in requiring a showing of classwide reliance, and its denial of class certification must be reversed.

#### 4. The District Court Abused Its Discretion Because It Did Not Analyze Whether More than a De Minimis Number of Consumers Purchased for children Over Two.

Even if it were correct that a consumer is not injured if they purchase a product with an unlawful label because they purchased for a child over two (it is not), the district court abused its discretion because it reached this conclusion without relying on any evidence. Citing no evidence, the district court concluded "The plaintiffs seek to certify a class comprised of all people who purchased the products, not just people who purchased the product for children under two." 1-ER-14. Hain now insists that their survey asking about consumers' last purchase should support the Court's conclusion. Ans. Br. at 62. But this ignores the survey Plaintiffs submitted at class certification that showed that 84% of consumers purchased the Products for children under two. 4-ER-503 ¶ 42.

Defendant relies on *In re Folgers Coffee Mktg. Sharel Mawby* from the Eighth Circuit to support its argument that consumers who purchased for children over two were not injured. Ans. Br. at 53-54. The case is inapt. The Eighth Circuit analyzed Minnesota law, which states “that actions under [] Minnesota consumer-protection laws are unsuitable for class treatment.” *Sorin v. Folger Coffee Co. (In re Folgers Coffee Mktg. Sharel Mawby)*, 159 F.4th 1151, 1156 (8th Cir. 2025). That’s because, unlike California, Minnesota law requires individual showings of reliance that “swamp any efficiencies that a class action might offer.” *Id.*

Worse yet, Defendant’s attempt to reframe Plaintiffs’ unlawfulness claim as a fraud claim ignores the objective standard that would then apply. At base, Defendant argues that, assuming the class includes consumers who purchased for children over two, not everyone would have been deceived and therefore not everyone would have been injured. Ans. Br. at 55. But this is not enough to defeat class certification. Even in Defendant’s example of “natural” or “oil-free” claims that would be “true or false as to every class member,” not every class member is necessarily deceived. Ans. Br. at 55. One could imagine a careful shopper who is wary of “natural” claims and reads the ingredient label to determine the truth. Whether that consumer knew the truth does not change that the consumer paid more for the product because the “natural” claim commands a higher market price. So too here—all members were injured because all members paid a price premium, regardless of why they purchased.

### 5. Hain Misapplies Case Law

Hain primarily relies on three cases to argue that the class was overbroad: *Berger*, *Mazza*, and *Downey*. None of them support the result Hain desires.

Both *Berger* and *Mazza* involved claims under the UCL *fraud* prong, which requires showing a likelihood that a reasonable consumer would be misled. At issue in *Berger* was a damage waiver in a tool rental agreement. *Berger v. Home Depot USA, Inc*., 741 F.3d 1061, 1064 (9th Cir. 2014). During the class period, defendant used five different agreements, "each of which discussed the damage waiver in a different way," and this necessitated an "independent legal analysis" for each contract. *Id*. at 1066, 1069. Because of the variance in the contract language, common issues did not predominate. *Id*. at 1069. In *Berger*, using "deceived" as a proxy for "injured" was consistent with California and Ninth Circuit law because the inquiry of exposure to determine cohesion and therefore predominance also determined whether money or property "may have been acquired by means of" the *deceptive* conduct in a UCL fraud case. *Berger*, 741 F.3d at 1069. The same was true in *Downey* and *Tucker*. *Cf. Downey v. Pub. Storage, Inc*., 44 Cal. App. 5th 1103, 1120 (2020) (common questions did not predominate because qualifying disclosures varied among several advertisements); *Tucker v. Pac. Bell Mobile Servs*., 208 Cal. App. 4th 201, 221 (2012) (common issues did not predominate in case involving fraud claims based on contract materials that sometimes disclosed the allegedly deceptively omitted information).

Similarly in *Mazza*, the Court addressed California consumer protection law, grouping analysis of claims brought under the CLRA, UCL, and FAL. *Mazza v.*

*Am. Honda Motor Co.*, 666 F.3d 581, 587 (9th Cir. 2012). The Court analyzed whether there was an "inference of reliance," citing *Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 124-25 (2011), which held, "[w]ith respect to plaintiffs' false advertising theory of recovery, both [the UCL and CLRA] require, at a minimum, that the class be exposed to the allegedly false advertising at issue and, with respect to the CLRA, an additional showing of reliance must be made." *Id*. Although *Mazza* cites cases that separately analyzed the CLRA (requiring classwide reliance) and UCL (requiring classwide injury), the *Mazza* Court, perhaps inartfully, collapsed the two. But that is because the result is the same: *Mazza* concluded the advertising campaign at issue was "limited [in] scope," such that all purchasers could not have been exposed to and relied on the representation or omission. Without the exposure, there is no classwide reliance for the CLRA, and no injury for the UCL fraud claim.

Neither *Berger* nor *Mazza* support the district court's conclusion that the class was overbroad because it potentially included some purchasers who "could not have been defrauded." 1-ER-14. Fraud is not an element of Plaintiff's UCL unlawfulness claim, and whether Defendant obtained more money because it defrauded consumers is not relevant to whether Defendant obtained more money as a result of its *unlawful* labeling.

Here, the question of injury rises and falls with the question of unlawfulness. If Defendant's Products are intended specifically for children under two, then the nutrient content claims are unlawful. If the nutrient content claims commanded a price premium, then all purchasers paid the price premium, regardless of their

motivations for purchasing. Thus, if the Products are unlawfully labelled—a necessarily common question—then all consumers were injured and the class is appropriately certified. If, conversely, the Products are not unlawfully labelled then no consumer was injured. Either way, Plaintiffs' UCL unlawfulness claim is a common question subject to common proof that is appropriate for class certification. The district court therefore abused its discretion in holding that fraud or deception is an element of the claim that defeated class certification and must be reversed.

#### 6. The District Court Should Have Certified a Narrower Class

"Ninth Circuit precedent obligat[es] district courts to tailor class definitions in a way that avoids predominance issues." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 634 (9th Cir. 2020).

Plaintiffs repeatedly proposed creating a subclass for consumers who purchased for children under two for the fraud claims in response to Defendant's argument that consumers who purchased over two were not injured. The district court was obligated to narrow the class if it believed the class was overbroad based on its erroneous conclusion that consumers who purchased for children under two were not injured.

#### 7. All Class Members Have Article III Standing

Hain proposes an alternative basis for rejecting class certification that the district court did not consider: whether class members have Article III standing. Article III standing requires showing only an injury that is "fairly traceable" to the

defendant's unlawful conduct, which "requires no more than *de facto* causality." *DOC v. New York*, 588 U.S. 752, 768 (2019). The Ninth Circuit, sitting *en banc*, has rejected the argument that a district court cannot permissibly certify a class "that potentially includes more than a de minimis number of uninjured class members." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th at 669 (9th Cir. 2022) (en banc). Rather than denying class certification, the Ninth Circuit's approach is to eliminate uninjured class members during claims administration. *See, e.g., Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017).

Plaintiffs' damages model proposes calculating the price premium associated with each at-issue nutrient content claim. 3-ER-80 ¶ 12. Thus, there are no individual issues that will predominate on calculating the restitution owed for each purchase. As explained above, if the Products' nutrient content claims are found to be unlawful, all consumers were injured because all paid a price premium associated with the claim. That the unlawful/tainted bait may have been purchased for some children who were over two does not defeat certification. Thus, all class members also have Article III standing.

**D. Plaintiffs Have Standing to Pursue Injunctive Relief.**

This Court reviews de novo a district court's determination whether a party has Article III standing. *Tucson v. City of Seattle*, 91 F.4th 1318, 1324 (9th Cir. 2024). Article III standing, unlike mootness, is evaluated at the time of filing and is not an ongoing inquiry. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (finding that standing is determined at the

"outset of the litigation" while mootness relates to a plaintiff's personal interest throughout the existence of a case); *Jackson v. Ca Dep't of Mental Health*, 399 F.3d 1069, 1072-73 (9th Cir. 2005) (same). Conversely, mootness is an ongoing inquiry. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016).

The district court did not explain whether its conclusion that "the plaintiffs do not have standing to seek injunctive relief" was based on mootness or Article III. 1-ER-6-13. Regardless, dismissal of Plaintiffs' claims for injunctive relief is improper under either standard. The district court concluded that Plaintiffs did not have standing because the disclaimer on the back label "corrected the misrepresentation," and "the plaintiffs have not shown or even alleged that they still have children under two or that they plan to have more children—making it even less likely that they will want to repurchase the products for children under two, or be misled about the products' suitability for their children." 1-ER-15. Neither basis is sufficient for dismissal.

Regarding Article III standing, at the time Plaintiff Howard filed the original complaint, her child was under two. He was born in September 2020 and Howard filed her complaint in January 2022. *See* 2-ER-65:5-9; 2-SER-490.Thus, even if it were a requirement that a plaintiff purchase for a child under two in order to have Article III standing, Howard met that requirement at the outset of the litigation. Hain now concedes that "the problem here is not mootness," thus the question of whether Plaintiffs currently have children under two or plan to have more children is not relevant.

Hain argues that Plaintiffs will "know full well that the FDA prohibits the use of nutrient content claims on the products." Ans. Br. at 69. But Hain does not provide any basis for its expectation that Plaintiffs remain apprised of FDA regulations. Hain attempts to blur the lines by arguing that Plaintiffs will not be misled again (*see* Ans. Br. at 69-70), but deception is not an element of their unlawfulness claim. Instead, if they purchase the Products again in reliance on the unlawful nutrient content claims, they will be harmed. Thus Plaintiffs have standing to seek injunctive relief.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court reverse and remand to the district court for further proceedings.

Respectfully submitted this 19th day of March, 2026

**GUTRIDE SAFIER LLP**

*/s/Hayley A. Reynolds/s/*
Seth A. Safier
Matthew T. McCrary
Hayley A. Reynolds

*Attorneys for Plaintiffs-Appellants*

No. 25-1919

## CERTIFICATE OF COMPLIANCE

Pursuant to the Federal Rules of Appellate Procedure, Rule 32(a)(7)(c), I hereby certify that the foregoing brief of Plaintiffs-Appellants complies with the word count limitation of Circuit Rule 32-1(b). There are 6,979 words in the brief according to the word count function of Microsoft Word for Mac version 16.101, the word-processing program used to prepare the brief.

Respectfully submitted this 19th day of March, 2026.

**GUTRIDE SAFIER LLP**

*/s/Hayley A. Reynolds/s/*
Seth A. Safier
Matthew T. McCrary
Hayley A. Reynolds

*Attorneys for Plaintiffs-Appellants*

No. 25-1919

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the Plaintiffs-Appellants' Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on March 19, 2026. I certify that all participants in the case who are registered CM/ECF users will be served by that system. I certify that all sealed documents will be served by email on all participants in the case.

Dated this 19th day of March, 2026.

**GUTRIDE SAFIER LLP**

*/s/Hayley A. Reynolds/s/*
Seth A. Safier
Matthew T. McCrary
Hayley A. Reynolds

*Attorneys for Plaintiffs-Appellants*